[No. 26731. Department Two. March 1, 1938.]

ARTHUR D. SHAW *et al., Respondents,* v. LOTTIE M. BRIGGLE *et al., Appellants.*[1]

*J. F. Aiken,* for appellants.
*Berkey & Cowan,* for respondents.

ROBINSON, J.—The Shaws, plaintiffs in the court below, owned certain real property in Spokane, which was encumbered by a mortgage for $1,278.25 held by the Spokane and Eastern Trust Company. They had, in addition, borrowed $422.13 from the Federal Housing Administration and expended it for improvements on the property. The note evidencing that loan was also held by the Spokane and Eastern Trust Company, and both obligations were payable at its office in monthly installments.

[1]Reported in 76 P. (2d) 1011.

Plaintiffs, desiring to exchange their property for unencumbered property, sought the services of defendant Lewis, a real estate broker. He arranged an exchange with Lottie M. Briggle. Lewis prepared the exchange agreement, which recited the property to be conveyed by the plaintiffs was free from encumbrances, "except a mortgage for $1,700;" this amount being used because the sum of the two obligations held by the trust company was $1,700.38, and all the parties mistakenly supposed that they were both covered by the mortgage.

It was further agreed that Mrs. Briggle would execute to the Shaws a second mortgage on the property to be conveyed to her by the Shaws for $370.30, to secure payment by her of certain encumbrances upon the property to be conveyed to them.

The parties met in the offices of the Spokane Title Company to close the deal. It is not certain whether or not Lewis was present, but it is clear that Mr. Morris, who, according to Lewis, was his partner in the deal, was there to supervise the matter. Mr. Hunt, escrow officer of the title company, explained to them that the $422.13 note was not secured by the mortgage, and also that interest had accrued on the obligations so that the sum of the two was $1,732.09. Thereupon, it was agreed that Mrs. Briggle would pay $32.09 in cash and assume the $1,700 indebtedness, as originally planned. Mr. Morris,. acting for Lewis and himself, procured an attorney to draft the deeds. The deed from the Shaws to Mrs. Briggle repeated the original mistake, reciting that the property was conveyed "subject to balance due on mortgage held by Spokane and Eastern Trust Company in the sum of $1,700." Thereafter, Mrs. Briggle paid the monthly installments of the $422.13 note as they became due until by June, 1936, the principal was reduced to $293.61.

On June 6, 1936, Mrs. Briggle entered into an exchange agreement with the Lewises to convey to them the property she had received from the Shaws. Lewis himself prepared the agreement, which recited that the property was free from indebtedness "except mtg. of $293.61 & $1,144.90 to Spokane and Eastern and $345.69 to Desmond Shaw, less credits of $45, $34 and $14.60."

A few days after the execution of this agreement, Lewis received a title company report in which he, according to his own testimony, discovered for the first time that the FHA note was not secured by the mortgage. Thereupon, according to his own admission, he refused to go through with the deal unless Mrs. Briggle would consent to delete from the exchange agreement "mtg. of $293.61" and a similar clause in the deed which had been prepared but not yet executed. Mrs. Briggle insisted that she had agreed to pay that note and that it was included in the $1,700, but, upon Mr. Lewis' insistence, she was prevailed upon to initial the deletion from the agreement so that it read: "Except mtgs. $1,144.90 to Spokane and Eastern and $293.00 to Desmond Shaw, less credits of $45, $34 and $14.60." It will be noted that he not only struck out the amount due on the FHA note, but he also used that figure to represent the amount due on the second mortgage to Shaw instead of the true amount $345.69. He then, by erasure and interlineation, caused the deed to read: "Subject to a mortgage of $1,144 to Spokane and Eastern Trust Company and one to Arthur Desmond Shaw and Isabelle Shaw of $293, and all of 1935 taxes."

Thereafter, neither Mrs. Briggle nor Lewis made any payments on the FHA note, and, demand being made upon the Shaws for its payment, they investi-

gated the matter, and, upon learning the facts, brought this action.

The trial judge, in giving his opinion at the close of the evidence, used some plain, forthright, and highly appropriate language concerning the conduct of defendant Lewis. It will be sufficient for our present purpose to say that the record clearly shows that, having by his own carelessness led his clients, the Shaws, into making an error which was likely to cost them $293.61, when he discovered the error, instead of correcting it, as, due to the sterling honesty of Mrs. Briggle, he might readily have done, he tried to turn it to his own advantage and, in effect, make $293.61 for himself. The trial court gave the Shaws judgment against Lewis for $293.61, made it a lien upon the property, and provided for its summary foreclosure.

■ A personal judgment against the defendants would be sustainable upon the theory of negligence alone. Granting a lien on the property is another matter. We think, however, that this was within the power of the court, since the suit was in equity and it had all the parties before it. Both the Shaws and Mrs. Briggle intended that the FHA note should be assumed by Mrs. Briggle as a lien. They believed that it was covered by, and included in, the mortgage which she, in terms, assumed. That was a mutual mistake. Before the defendant Lewis took the property, he knew all the facts which would entitle the Shaws to reform the agreement and the deed. He took title with that knowledge. The court had jurisdiction to reform the original agreement and the deed, and properly held that this reformation should affect the rights of Lewis, a subsequent purchaser with full knowledge. *Miles v. Craig*, 147 Wash. 530, 266 Pac. 182.

Having established the unpaid portion of the note

as a lien upon the property, it was further within the power of the court to summarily foreclose it.

Respondents assign as error that the court erred in not entering judgment against Mrs. Briggle also. Respondents did not cross-appeal and are in no position to claim or assign error.

The judgment and decree appealed from are affirmed.

STEINERT, C. J., BEALS, BLAKE, and MILLARD, JJ., concur.