FILED
COURT OF APPEALS
DIVISION II

2013 MAY 21 AM 10: 09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM M. PRICE III and SUSAN W. PRICE, | No. 42617-0-II |
| Respondents, | |
| v. | |
| VERONICA G. PRICE, | PUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Veronica G. Price[1] appeals the superior court's (1) temporary anti-harassment protection order and its final civil anti-harassment protection order entered against her, removing her from her beachfront home that she jointly owns with other family members; and (2) denial of her motion for reconsideration of the final anti-harassment protection order. She argues pro se that the superior court improperly entered both orders because they (1) violated her right to freedom of speech; (2) violated her right to due process because they "evicted"[2] her from her home without notice and opportunity to be heard; and (3) were not supported by sufficient evidence. Both protection orders have long expired; thus, Veronica's challenges to these orders are moot.

---

[1] Intending no disrespect, we refer to the parties by their first names for clarity.

[2] Br. of Appellant at 3.

Nevertheless, because her challenges involve issues of likely recurring public interest, we address whether the superior court had authority under RCW 10.14.080(8) to exclude Veronica from her home. We hold that it did not. Accordingly, we reverse and remand to the superior court to vacate both the temporary and final civil anti-harassment protection orders.[3] We deny Veronica's request for attorney fees.

## FACTS

### I. BACKGROUND FACTS

Veronica G. Price jointly owns Long Beach beachfront property with her late husband's ("Jerry" Frederick Price) family members. Veronica owns a 5/6 interest in the property. Five other Price family members jointly own the remaining 1/6 interest such that William M. Price III and Susan W. Price own a 1/30 interest in the property.

As majority owners, Veronica and her late husband had maintained the Long Beach property for the ten years preceding this litigation: They paid property taxes, purchased liability insurance, and invested "thousands of dollars" to maintain the house and to repair property damage that the other 1/6 owners caused. Verbatim Report of Proceedings (VRP) at 23. According to Veronica, during the summer months, the other owners frequently held large

---

[3] Because we resolve this case on statutory grounds, we do not reach the merits of Veronica's constitutional and evidentiary claims. And because we reverse the challenged orders and we remand for the superior court to vacate them, we do not address her appeal from the superior court's denial of her motion to reconsider.

parties at which people consumed alcohol, lit fires, and were arrested by the police. Neighbors also reported instances of the other owners creating fire hazards by shooting rockets from the roof and throwing fireworks into a lit grill under a covered wooden porch. These circumstances made Veronica afraid to leave the property unattended.

After her husband died in December 2010, Veronica moved from their Seattle rental home into the Long Beach house, which eventually became her permanent sole residence. She began to remodel a bathroom to repair sewage and water damage that one of the other owners had caused by failing to winterize the pipes.

In April 2011, William and Susan called Veronica and asked to use the property for their summer vacation, from August 5 to August 22; Veronica verbally agreed. The parties dispute whether she also agreed to absent herself from the beachfront house at the time of William and Susan's vacation there. When William and Susan arrived on August 5, Veronica was absent; she remained absent for more than a week.

On August 15,[4] Veronica arrived back at the property, entered the house, and argued with William, Susan, and other family members about the physical condition of the property. According to William and Susan, Veronica was "ranting and raving," "screaming at the top of her lungs," "shaking [her] fist and fingers" at them, and using profanity. VRP at 15; Clerk's Papers (CP) at 3. She called William and Susan "liars" and "pigs" and accused them of

---

[4] William and Susan's petition for the temporary anti-harassment protection order stated that Veronica was at the beachfront property on August 16 and 17. But William testified that Veronica stayed two nights at the beachfront property before he and Susan filed this petition on the afternoon of August 17. Thus, it appears that William and Susan meant that Veronica was at the property on August 15 and 16, which dates are consistent with other portions of the record. *See e.g.*, Clerk's Papers (CP) at 16 (stating Veronica unloaded furniture at the house on August 16).

3

"multiple property damages." CP at 3. According to Veronica, William had to restrain Susan from attacking her (Veronica). This argument apparently caused William and Susan's older grandchildren (ages 9, 13, and 15) to run upstairs and their youngest grandchild (age 5) to run outside crying and to hide under a neighbor's tree.

Veronica eventually left the house and sat in her car for a while. That night, Veronica entered the house again and, apparently without speaking to anyone, "went into one of the bedrooms, shut the door, [and] stayed there all night." VRP at 14. The next morning, Veronica left the house; she returned later with a van containing a chest of drawers and "implements for gardening," which she placed outside the house. VRP at 14. Veronica then left the property. Later that night, she returned, argued again with William and Susan, and again spent the night in one of the bedrooms.

## II. PROCEDURE

### A. Temporary Anti-harassment Protection Order

The next day, August 17, William and Susan petitioned the superior court for a civil anti-harassment protection order against Veronica under chapter 10.14 RCW, using a preprinted form. Under the form's section labeled "[s]creen for court's jurisdiction," William and Susan checked boxes indicating that (1) the case involved "title or possession of real property" and (2) Veronica "claim[ed] an interest in that property, such as the right to occupy." CP at 1. Based on the facts alleged in this petition, the superior court entered an ex parte temporary anti-harassment protection order against Veronica, restraining her from (1) making or attempting to contact William, Susan, and their minor grandchildren; (2) making or attempting to keep William,

4

Susan, and their minor grandchildren under surveillance;[5] and (3) *"entering* or *being within 100 yards* of [the] beach[front] [property]."[6] CP at 5 (emphasis added). Later that evening, the police served the temporary anti-harassment protection order on Veronica at the beachfront property, apparently pulling her out of bed. The order notified Veronica about an August 19 hearing date. Having nowhere else to go, Veronica stayed in a motel.

B. Final Civil Anti-harassment Protection Order

Two days later, on the morning of August 19, the superior court held a hearing to determine whether Veronica had committed unlawful harassment. William and Susan did not contest that Veronica owned an interest in the property or that she may have been using the property as her permanent residence.[7] William testified that, over the two-day period, (1) Veronica had briefly and intermittently entered the beachfront property "ranting and raving" and had accused him and Susan of committing "multiple sins upon the house"—such as allowing the bathroom "to go to pot"; (2) she would then "sit in her car . . . for a while" before going back inside and getting into more verbal disagreements with them; and (3) in the evening, she would

---

[5] The petition allegations giving rise to both this no-surveillance provision and the preceding no-contact provision focused exclusively on Veronica's actions and words on the property in issue. There were no allegations that she attempted to contact or to keep William, Susan, and their minor grandchildren under surveillance at any other time or location. Therefore, we do not view these anti-harassment protection orders as having evidentiary support beyond these narrow parameters.

[6] The temporary anti-harassment protection order further provided:
This order is to keep the peace. Any partition of real property on a permanent basis [or] *rights to occupy [and] use [the] property must be decided in a separate, superior court action.* The court makes no findings to parties' rights to title.
CP at 5 (emphasis added).

[7] William claimed he did not know whether Veronica still had her former residence in Seattle or whether she had another permanent residence.

go into one of the bedrooms, shut the door, and "stay[ ] there all night." VRP at 14-15. Susan testified that Veronica had used "profanities" during her first rant in front of their four grandchildren, which had caused the youngest child to leave the house crying; thus, they (William and Susan) were seeking the anti-harassment protection order mainly for their grandchildren. VRP at 17.

Veronica testified that (1) she was a 5/6th owner of the property; (2) she had been living there since her husband died in late 2010 and had no other residence at the time; and (3) she had invested over $150,000 in the house to repair damage that William and Susan and the other 1/6 owners had caused. She argued that William and Susan had failed to show unlawful harassment because the superior court could not enter a civil anti-harassment protection order under RCW 10.14.080(8) to prevent her from "using or enjoying her real property," or any property to which she had a cognizable claim, unless (a) the order was issued under chapter 26.09 RCW, the domestic relations statute or (b) the order was part of a separate civil action to adjudicate the parties' respective property rights. VRP at 7. She also argued that under RCW 10.14.080(7), the superior court could not base its anti-harassment protection order on any "constitutionally protected free speech," such as the mere verbal exchanges that William and Susan had alleged. VRP at 7-8.

The superior court orally ruled that it had heard enough evidence of "verbal harassment" to justify an anti-harassment protection order. VRP at 29. The superior court entered a final civil anti-harassment protection order against Veronica, which provided:

> Petitioners [William and Susan] shall vacate [the beachfront property] by noon on August 21, 2011. *Respondent [Veronica] shall be excluded from the residence and maintain a distance of 100 yards until August 21, 2011 at 1:00 p.m.*

Supp. CP at 35 (emphasis added). This order apparently cut short by one day William and Susan's beachfront property vacation. It also prevented Veronica from being present at or from using or enjoying the beachfront property for an additional two days, until August 21. The superior court did not enter written findings of fact and conclusions of law.

On August 29, Veronica moved pro se for reconsideration of the superior court's final anti-harassment protection order, alleging many of the facts previously described. The superior court denied her motion. Veronica appeals.

## ANALYSIS

Veronica argues that we should vacate both the temporary and final civil anti-harassment protection orders because they are invalid and the evidence is insufficient to support them. We hold that the superior court lacked statutory authority under the civil anti-harassment statute, RCW 10.14.080(8), to prohibit Veronica from using or enjoying the Long Beach beachfront property, to which she had a cognizable claim of interest. Because we reverse the superior court's temporary and final anti-harassment protection orders on statutory grounds, we do not address Veronica's constitutional claims, her evidentiary challenge, or her appeal from the superior court's denial of her motion for reconsideration.

### I. THRESHOLD MOOTNESS ISSUE

We first address whether Veronica's case is moot. The superior court's temporary and final civil anti-harassment protection orders have both expired; and Veronica has presumably been able to regain access to her home. Nevertheless, in her pro se brief, Veronica contends that her case is not moot because (1) (echoing her counsel's argument below) the superior court

improperly used the anti-harassment statute to "remove [her] from her home,"[8] thereby prohibiting her from the use or enjoyment of real property to which she had a cognizable claim of interest, contrary to RCW 10.14.080(8); and (2) we can provide her with "effective relief" by removing the "stigma" of the erroneous anti-harassment protection orders from her record. Br. of Appellant at 19. Addressing only her first challenge, we agree that the superior court exceeded its statutory authority in entering these protection orders under the anti-harassment statute, RCW 10.14.080(8); therefore, even though the orders have expired, we consider her appeal because it involves a matter of continuing and substantial public interest.

Generally, we will dismiss an appeal where only moot or abstract questions remain or where the issues raised in the trial court no longer exist. *In re Det. of M.K.*, 168 Wn. App. 621, 625, 279 P.3d 897 (2012). We consider a case moot if there is no longer a controversy between the parties, if the question is merely academic, or if a substantial question no longer exists. *Pentagram Corp. v. Seattle*, 28 Wn. App. 219, 223, 622 P.2d 892 (1981). Nevertheless, we may consider an otherwise moot case if it involves an issue of continuing and substantial public interest. *Thomas v. Lehman*, 138 Wn. App. 618, 622, 158 P.3d 86 (2007).

To determine whether a case involves the requisite public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur. *Thomas*, 138 Wn. App. at 622. The facts here weigh in favor of our review, especially in light of the probability that the issue of a court's authority under the anti-

---

[8] Specifically, Veronica contends that the superior court deprived her of "due process" by improperly using the anti-harassment statute to remove her from her home. Br. of Appellant at 19.

harassment statute may arise again in the future and may affect other Washington residents. Because Veronica's statutory challenge to the superior court's authority to issue these two protection orders under RCW 10.14.080(8), prohibiting her from the use or enjoyment of her real property, raises an issue of continuing and substantial public interest, we next address the scope of this statute and whether the superior court here acted within that scope.

## II. SCOPE OF STATUTORY AUTHORITY

Veronica argues that the superior court erred in entering both the temporary and final civil anti-harassment protection orders against her because (1) these orders prevented her from the use or enjoyment of real property to which she had a cognizable claim of interest; and (2) these restraints on her property rights were not authorized by RCW 10.14.080(8), the anti-harassment statute. We agree.

We review questions of statutory interpretation de novo. *Shinaberger ex rel. Campbell v. LaPine*, 109 Wn. App. 304, 307, 34 P.3d 1253 (2001). A superior court may enter an ex parte temporary anti-harassment protection order with or without notice in response to the filing of an affidavit which, to the court's satisfaction, shows reasonable proof of unlawful harassment and that great or irreparable harm will result to the petitioner if the temporary anti-harassment protection order is not granted. RCW 10.14.080(1). After a hearing, the superior court may enter a final civil anti-harassment protection order if it finds by a preponderance of evidence that "unlawful harassment" exists. RCW 10.14.080(3).

But even where the petitioner makes the requisite showing of unlawful harassment, the superior court "shall not" grant an exparte temporary anti-harassment protection order or a final civil anti-harassment protection order that

9

> ... prohibit[s] the respondent from *the use or enjoyment of real property to which the respondent has a cognizable claim* unless that order is issued under chapter 26.09 RCW or under a separate action commenced with a summons and complaint to determine title or possession of real property.

RCW 10.14.080(8) (emphasis added). Here, it is undisputed that (1) Veronica is a 5/6 owner of the Long Beach beachfront property; and (2) the superior court entered both its temporary and final civil anti-harassment protection orders under chapter 10.14 RCW (rather than under chapter 26.09 RCW) and not in the context of a civil action to determine title to or possession of real property. As a 5/6 owner of the property, Veronica had a "cognizable claim" of interest in the property; therefore, she was entitled to possess the entire property on equal footing with William and Susan (and the others who jointly owned the remaining 1/6 interest). *Yakavonis v. Tilton*, 93 Wn. App. 304, 312, 968 P.2d 908 (1998) ("'[E]ach tenant in common of a possessory estate is entitled to possession, *equally with his cotenants, of all parts of the land at all times.*'") (emphasis added) (quoting 17 WILLIAM B. STOEBUCK, WASH. PRAC.: REAL ESTATE: PROPERTY LAW § 1.28, at 58 (1995)).[9]

Despite being on notice[10] of Veronica's cognizable claim of interest in the property, the superior court entered (1) an exparte temporary anti-harassment protection order, restraining Veronica from "*entering* or *being within 100 yards* of the beach[front] [property]"; and (2) a

---

[9] We note that because William and Susan were also joint owners, they also have a cognizable claim of interest in the property. *Yakavonis*, 93 Wn. App. at 312 ("Regardless of the percent of ownership, a cotenant has an equal right of possession with all other cotenants.") To achieve the relief they sought, however, William and Susan needed either (1) to seek a protection order under chapter 26.09 RCW; or (2) to initiate a separate civil action, such as a partition action, to determine the title or possession of the property. RCW 10.14.080(8); *see also* RCW 7.52.010.

[10] The superior court was on notice that Veronica claimed an interest in the property, both when it received William and Susan's initial petition for a temporary anti-harassment protection order and when it held its August 19 hearing before entering the final order.

final civil anti-harassment protection order that Veronica "shall be *excluded* from the [beachfront property] and *maintain a distance of 100 yards* until August 21, 2011 at 1:00 p.m." CP at 5 (emphasis added); Supp. CP at 35 (emphasis added). These restraint provisions expressly prohibited Veronica from using or enjoying the Long Beach property to which she had a cognizable claim of interest. The temporary anti-harassment protection order's additional "no contact" and "no surveillance" restraint provisions were premised solely on Veronica's contact with William, Susan, and their grandchildren at the beachfront property; thus, these provisions had the practical effect of excluding Veronica from her property as well.

We hold that the superior court lacked authority under RCW 10.14.080(8) to enter these restraint provisions in both its ex parte temporary anti-harassment protection order and its final civil anti-harassment protection order. Therefore, both protection orders were invalid and must be vacated.

## ATTORNEY FEES

Veronica requests attorney fees on appeal. Because she is appearing pro se, she is not entitled to attorney fees.[11] *In re Marriage of Brown*, 159 Wn. App. 931, 938-39, 247 P.3d 466

---

[11] Even if Veronica were entitled to attorney fees despite her pro se status, we would deny her request because she fails to devote a section of her opening brief or to cite applicable law to support her request. RAP 18.1(a), (b).

No. 42617-0-II

(2011). Therefore, we deny her request.

We reverse both anti-harassment protection orders, remand to the superior court to vacate these orders, and deny Veronica's request for attorney fees on appeal.

_____
Hunt, J.

We concur:

_____
Johanson, A.C.J.

_____
Quinn-Brintnall, J.

12