

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARCELLUS BUCHHEIT and
LISA BUCHHEIT-EKDAHL,

          Respondents,

      v.

CHRISTOPHER J. GEIGER,

          Appellant.

No. 72548-3-I

DIVISION ONE

PUBLISHED OPINION

FILED: February 16, 2016

BECKER, J. — This is an appeal from an antiharassment order issued to protect the owners of a lakeside lot from alleged abusive conduct and trespass by their upland neighbor. The petitioners dispute their neighbor's claim to an easement over their lakeside property. Because the neighbor's claim is cognizable, the dispute is not one that can be resolved by an antiharassment order issued under chapter 10.14 RCW. The order is reversed.

The parties own adjoining parcels of property on the north side of Lake Stevens. They acquired their respective lots in 2013 from Kenneth and Laurie Withrow. Appellant Christopher Geiger owns and lives on lot 1, the upland lot. Lot 2, a waterfront parcel south of Geiger's, is owned by respondents Marcellus Buchheit and his wife, Lisa Buchheit-Ekdahl. The Buchheit lot has a dock, boat

ramp, and bulkhead. The Buchheits plan to construct a residence on their lot in the future. In the meantime, they use the lot for recreation.

Geiger began to use lot 2 without the permission of the Buchheits. Among other things, he affixed a floating dock to the Buchheit property, stored personal items on their property, and walked across their property to go between his dock and his home. When the Buchheits confronted him about trespassing, he claimed to have an easement.

The Buchheits filed a petition for an antiharassment order of protection under chapter 10.14 RCW. The petition alleged that Geiger had ignored their repeated requests not to trespass and that he was intimidating and aggressive in his conversations with Buchheit-Ekdahl. The petition asked the court to order Geiger to stay off their lot and their dock.

Chapter 10.14 RCW creates a cause of action for an order of protection in cases of unlawful harassment. The chapter "is intended to provide victims with a speedy and inexpensive method of obtaining civil antiharassment protection orders preventing all further unwanted contact between the victim and the perpetrator." RCW 10.14.010. The authority of the court to issue an antiharassment order is set forth in RCW 10.14.080. The court has "broad discretion to grant such relief as the court deems proper." RCW 10.14.080(6). The statute limits the court's discretion in several ways. One limitation is designed to ensure that an antiharassment order is not used to resolve a dispute involving real property to which the respondent has a "cognizable claim":

> The court in granting an ex parte temporary antiharassment protection order or a civil antiharassment protection order, shall not

2

> prohibit the respondent from the use or enjoyment of real property to which the respondent has a cognizable claim unless that order is issued under chapter 26.09 RCW or under a separate action commenced with a summons and complaint to determine title or possession of real property.

RCW 10.14.080(8).

Geiger moved to dismiss the antiharassment petition under RCW 10.14.080(8). He submitted a document that he argues gives him a cognizable claim to a 23-foot-wide easement over the Buchheit property for lake access.

The document in question, a "Declaration of Easement and Restrictions," was recorded in the chain of title before the Buchheits purchased lot 2. The declaration identifies lot 1 (Geiger) as the dominant tenement and lot 2 (Buchheit) as the servient tenement. The document is carelessly drafted. The easement granted for the benefit of lot 1 is access over a 23-foot-wide strip of land on the easterly edge of lot 1, Geiger's own lot. The commissioner who presided over the hearing on the antiharassment petition was not convinced Geiger had a valid easement:

> Cutting to the chase, it seems to me the pivotal issue right now is how does this easement, if there is one, question get resolved. And at this point it is not clear that the respondent, in my opinion, has an easement. I mean it is contradictory, it is internally inconsistent and I cannot interpret it in this forum, in this context and make a ruling one way or the other. Other than to say, it doesn't appear to grant Mr. Geiger access across the petitioner's property. I am going to grant the unlawful harassment protection order. . . . Now, I would preserve his right to come back to court if this easement matter is resolved in his favor and he has this matter reviewed. At this point, he has no right to use their property.

The commissioner entered an order of protection as requested by the Buchheits.

3

Geiger appeals and argues that the commissioner lacked statutory authority to enter an antiharassment order that prevented him from entering lot 2. In Geiger's view, his claim to an easement transformed the dispute into one that must be resolved through a quiet title action. He describes the case as "a property dispute dressed up as a harassment claim." According to Geiger: "What was going on between the parties over the months leading up to the petition was nothing more or less than the unpleasant interactions that are, unfortunately, common between neighbors who have conflicting views of their property rights."

Geiger's appeal requires us to interpret the term "cognizable claim" as it is used in RCW 10.14.080(8). This court reviews issues of statutory interpretation de novo. Price v. Price, 174 Wn. App. 894, 903, 301 P.3d 486 (2013).

Price is the only published decision discussing RCW 10.14.080(8). The respondent in Price successfully appealed an antiharassment order restraining her from coming within 100 yards of beachfront property in which she held a majority ownership interest. Price deals with an undisputed claim to real property. It does not shed any light on what makes a claim "cognizable" if it is disputed.

When we interpret a statute, our primary objective is to ascertain and give effect to the intent of the legislature. We begin with the statute's plain language and ordinary meaning. Where the legislature has not defined a term, we may look to related statutes and dictionary definitions, as well as the statute's context, to determine the plain meaning of the term. Cornu-Labat v. Hosp. Dist. No. 2

Grant County, 177 Wn.2d 221, 231-32, 298 P.3d 741 (2013); Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

Chapter 10.14 RCW does not define the term "cognizable claim." Geiger calls our attention to dictionary definitions of "cognizable" such as, for example, "capable of being judicially heard and determined." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 440 (2002). See also BLACKS LAW DICTIONARY 316 (10th ed. 2014): "Capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction."

The dictionary definitions are too broad to be helpful. Almost any dispute about the use and enjoyment of real property is capable of being tried in superior court. In cases adjudicated under RCW 10.14.080, the very purpose of the "cognizable claim" limitation in subsection (8) is to draw the line between those cases in which the court is authorized to prohibit the respondent from the use or enjoyment of real property and those cases in which the court lacks that authority.

We have not found a definition of "cognizable claim" in any statute, let alone a "related statute." But as Geiger points out, a common legal usage of the term "cognizable claim" is in connection with the standard for considering a motion to dismiss under CR 12(b)(6). See, e.g., Talarico by Johnston v. Foremost Ins. Co., 105 Wn.2d 114, 115, 712 P.2d 294 (1986) ("Under the law and facts pleaded in the complaint, the child stated no legally cognizable claim against his parents and the child and the parents pleaded no valid claim against the insurer; consequently, the trial court did not err in dismissing their respective

5

claims for 'failure to state a claim upon which relief can be granted'"), quoting CR 12(b)(6); Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 506, 325 P.3d 193 (2014) ("This case was dismissed at the pleading stage, and the employees' claim for negligent infliction of emotional distress was dismissed without analysis. In light of this fact and in light of Washington's relatively liberal standard for stating a cognizable claim, we reverse the dismissal.")

We accept Geiger's proposal to define a cognizable claim under RCW 10.14.080(8) as one that would survive a motion to dismiss under CR 12(b)(6) if pleaded in an ordinary civil action. Under CR 12(b)(6), a plaintiff states a claim upon which relief can be granted if it is possible that facts could be established that would support relief. McCurry v. Chevy Chase Bank, FSB, 169 Wn.2d 96, 101, 233 P.3d 861 (2010).

On its face, the "Declaration of Easement and Restrictions" creates an easement over lot 1 for the benefit of the dominant tenement, which is also lot 1. It does not give the owner of lot 1 any particular claim to the use of any part of lot 2. But Geiger contends the language declaring an easement over lot 1 (his own property) is merely a scrivener's error that could easily be corrected by reformation. Geiger argues that facts could possibly be established to support reformation of the declaration to create an effective easement over lot 2 for the benefit of lot 1.

One who seeks reformation of an instrument must prove by clear, cogent, and convincing evidence that (1) both parties to the instrument had an identical intention as to the terms to be embodied in a proposed written document, (2) the

writing which was executed is materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation of the writing to express that identical intention. Asotin County Port Dist. v. Clarkston Cmty. Corp., 2 Wn. App. 1007, 1011, 472 P.2d 554 (1970).

In the purchase and sale agreement between Geiger and the Withrows, the Withrows agreed to provide lot 1 with an "ingress/egress easement from the easterly property line including the easterly bulk head and the boat ramp for shared use between lots 1 & 2." Geiger likely could establish that he and the Withrows had the identical intention that the easement would burden lot 2. The question less easily answered is whether it would be fair to the Buchheits to reform the easement to conform to what Withrows and Geiger intended.

The "speedy and inexpensive" procedure for obtaining a civil antiharassment order is not well-suited for addressing the legal issues involved in answering that question. Reformation will be granted even against a subsequent purchaser who obtained title with notice of the mistake. Shaw v. Briggle, 193 Wash. 595, 598, 76 P.2d 1011 (1938). In Shaw, the subsequent purchaser was personally involved in the drafting of the mistaken instrument and tried to profit from it. Geiger does not posit that the Buchheits were personally involved in the transaction whereby he acquired lot 1. But the declaration of easement does identify lot 2 as the servient tenement, and the declaration was recorded before the Buchheits purchased lot 2 from the Withrows. Arguably, the Buchheits might be deemed to have notice that the lot they purchased was burdened by a

7

23-foot-wide easement. In a hypothetical lawsuit involving Geiger, the Buchheits, and the Withrows, we cannot say that Geiger's claim for reformation would necessarily be dismissed on a CR 12(b)(6) motion.

Although the commissioner said he could not interpret the easement "in this forum," the commissioner did in fact interpret the easement as being invalid when he declared: "At this point, [Geiger] has no right to use their property." The commissioner's conclusion that Geiger has no right to use lot 2 was the primary basis for issuing the antiharassment order. The commissioner allowed that the order could be changed if Geiger obtained a favorable ruling on the easement from some other forum. It is not clear, however, that in some other forum, Geiger would be able to avoid the collateral estoppel effect of the commissioner's determination that the easement gives him no right in the property. With the legal uncertainty that hangs over the easement, this seems to be exactly the kind of situation the legislature intended to avoid by adopting the "cognizable claim" limitation in RCW 10.14.080(8).

We conclude Geiger has a cognizable claim to use and enjoy a 23-foot-wide easement over the lot owned by the Buchheits. It follows that the trial court lacked authority to issue an antiharassment order prohibiting him from entering their lot. To the extent the Buchheits allege harassing conduct by Geiger unrelated to his claim of easement, they may renew their petition and seek narrower prohibitions.

Reversed.

WE CONCUR:

Becker, J.

Trickey, J

Appelwick, J