IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| SAMISH INDIAN NATION, | ) | No. 79733-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON DEPARTMENT OF LICENSING; TERESA BERNTSEN, DIRECTOR, | ) ) ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — RCW 82.38.310(1) allows the Department of Licensing (DOL) to negotiate fuel tax agreements with "any federally recognized Indian tribe located on a reservation within this state." The statute applies to retail stations "located on reservation or trust property." This case turns on the plain meaning of "reservation" in RCW 82.38.310(1). When the Samish Indian Nation (Samish Tribe)[1] sought to negotiate a fuel tax agreement, the tribe had trust property, but it did not have a formal reservation in Washington. DOL refused to negotiate. The superior court affirmed.

The dictionary definition of "reservation" extends both to formal reservations and tribal trust properties. Although the legislature appears to distinguish between

_____

[1] In its briefing, Samish Indian Nation refers to itself as the Samish Tribe.

reservations and trust properties in the statute, in context, the location of a tribe and the location of an operating fuel station are very different questions. In context, the plain meaning of "any federally recognized Indian tribe located on a reservation within this state" is the dictionary definition of "reservation" and extends to trust property. Alternatively, it would be an absurd result to promote litigation by barring DOL from negotiating fuel tax agreements with federally recognized tribes operating retail fuel stations located on trust property merely because the tribe lacks a formal reservation.

Therefore, we reverse.

## FACTS

The Samish Tribe is a federally recognized Indian tribe.[2] In 2004, the Samish Tribe obtained a parcel of land in Skagit County, known as the Campbell Lake Property, which is held in trust. The tribe does not have a "formal reservation."[3]

In 2018, the Samish Tribe sought to negotiate a fuel tax agreement with DOL. DOL denied the request because the Samish Tribe "does not have a reservation within the state."[4]

The Samish Tribe appealed to the Skagit Court Superior Court under RCW 34.05.570(4) of the Administrative Procedure Act. On February 21, 2019, the court determined DOL's interpretation of RCW 82.38.310(1) was not

---

[2] 84 Fed. Reg. 1200-01, 1203 (Feb. 1, 2019).

[3] Clerk's Papers (CP) at 546 (stipulated fact 8).

[4] CP at 205.

"unconstitutional, outside its authority, arbitrary and capricious, or taken by a person not lawfully entitled to take such action."[5]

The Samish Tribe appeals.

ANALYSIS

The Samish Tribe contends the meaning of "reservation" under RCW 82.38.310(1) includes tribal trust properties such as the tribe's Campbell Lake property.

RCW 34.05.570(4) provides a catch-all for "[r]eview of other agency action . . . not reviewable under subsection (2) or (3)."  Under subsection (4)(c),

> [r]elief for persons aggrieved by the performance of an agency action
> . . . can be granted only if the court determines that the action is:
>
> (i) Unconstitutional;
>
> (ii) Outside the statutory authority of the agency or the authority
> conferred by a provisions of law;
>
> (iii) Arbitrary or capricious; or
>
> (iv) Taken by persons who were not properly constituted as agency
> officials lawfully entitled to take such action.

Challenges under RCW 34.05.570(4) are reviewed de novo.[6]  Additionally, "[t]he meaning of a statute is a question of law reviewed de novo."[7]  The Samish

---

[5] CP at 671.

[6] Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 549, 389 P.3d 731 (2017) (quoting Cornelius v. Dep't of Ecology, 182 Wn.2d 574, 585, 344 P.3d 199 (2015)).

[7] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing State v. Breazeale, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); State v. J.M., 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

Tribe, as "the party asserting invalidity," has the "burden of demonstrating the invalidity" of DOL's action.[8] We review "agency action from the same position as the superior court, and review the administrative record rather than the superior court's findings or conclusions."[9]

The question whether DOL acted within its authority turns on the meaning of "reservation" in RCW 82.38.310(1). When interpreting a statute, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."[10] "'[T]he plain meaning is . . . derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'"[11]

Under RCW 82.38.310(1),

[t]he governor may enter into an agreement with any federally recognized Indian tribe located on a reservation within this state regarding fuel taxes included in the price of fuel delivered to a retail station wholly owned and operated by a tribe, tribal enterprise, or tribal member licensed by the tribe to operate a retail station located on reservation or trust property.[12]

---

[8] RCW 34.05.570(1)(a).

[9] Crosswhite, 197 Wn. App. at 548 (citing Edelman v. State, 160 Wn. App. 294, 303, 248 P.3d 581 (2011)).

[10] Campbell & Gwinn, 146 Wn.2d at 9-10 (citing J.M., 144 Wn.2d at 480).

[11] Magney v. Truc Pham, __ Wn.2d __, 466 P.3d 1077, 1082 (2020) (alterations in original) (quoting Campbell & Gwinn, 146 Wn.2d at 11).

[12] See RCW 82.38.310(5) ("The governor may delegate the power to negotiate fuel tax agreements to the department of licensing.").

"Reservation" is not defined in the statute. "Where the legislature has not defined a term, we may look to dictionary definitions, as well as the statute's context, to determine the plain meaning of the term."[13] The dictionary defines "reservation," in part, as "a tract of public land set aside for a particular purpose (as schools, forest, or the use of Indians)."[14] Here, the parties agree the dictionary definition of "reservation" broadly includes tribal trust lands, along with formal reservations.

Although DOL concedes tribal trust property is included in the dictionary definition of "reservation," DOL points to the context provided by the legislature's two separate uses of "reservation" in RCW 82.38.310(1). When the legislature uses different language in the same statute, courts presume the legislature intended a different meaning.[15] "Where the identical word or phrase is used more than once in the same act, there is a presumption that they have the same meaning."[16] Here, in RCW 82.38.310(1), at the beginning of the sentence, the legislature states the governor may enter into a fuel tax agreement "with any federally recognized Indian tribe located on a reservation within this state."[17] At the end of the sentence, the legislature provides the fuel tax agreements may

---

[13] Matter of Detention of J.N., 200 Wn. App. 279, 286, 402 P.3d 380 (2017) (citing Buchheit v. Geiger, 192 Wn. App. 691, 696, 368 P.3d 509 (2016)).

[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1930 (1993).

[15] Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 219, 173 P.3d 885 (2007) (citing Koenig v. City of Des Moines, 158 Wn.2d 173, 182, 142 P.3d 162 (2006)).

[16] 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:28 at 357 (6th ed. 2000).

[17] (Emphasis added.)

apply to "a retail station <u>located on reservation or trust property</u>."[18] If the term "reservation" does not include "trust property" at the end of the sentence, DOL argues "reservation" at the beginning of the sentence does not include "trust property." Neither party contends the statute is ambiguous. We agree.

However, there is a nuanced context to the two different uses of "reservation" in the sentence. A retail gas station has a physical manifestation, typically consisting of gas pumps, a parking lot, and a building affixed to a specific parcel of real property. A federally recognized Indian tribe is a noncorporeal entity not physically affixed to a particular parcel of real property.[19] The statute's reference to a tribe "located on a reservation" is different than the reference to the location where a retail station is affixed to a parcel of property. Because the context for the two uses of reservation in the statute vary, we are not compelled to apply an identical meaning. Rather, we conclude the plain meaning of "reservation" in the context of "any federally recognized Indian tribe located on a reservation" is consistent with the dictionary definition and extends to trust lands.

---

[18] (Emphasis added.)

[19] <u>See generally</u>, 23 TIMOTHY BUTLER AND MATTHEW KING, WASHINGTON PRACTICE: ENVIRONMENTAL LAW AND PRACTICE § 3.1, at 36 (2nd ed. 2007) ("Indian tribes are recognized by the United States as sovereign political entities."); <u>Montana v. United States</u>, 450 U.S. 544, 563, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981) ("Indian tribes are 'unique aggregations possessing attributes of sovereignty over both their members and their territory'") (quoting <u>United States v. Wheeler</u>, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978)); <u>Long v. Snoqualmie Gaming Comm'n</u>, 7 Wn. App. 2d 672, 680, 435 P.3d 339 ("Federally recognized Indian tribes are "separate sovereigns pre-existing the Constitution.") (quoting <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 56, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978), <u>review denied</u>, 193 Wn.2d 1031 (2019).

Alternatively, it would be an absurd result to bar DOL from negotiating fuel tax agreements with federally recognized tribes operating retail fuel stations located on trust property merely because the tribe lacks a formal reservation. DOL offers no policy supporting such an arbitrary distinction, the legislature identifies no such inclination in its preamble,[20] and we cannot conceive of any possible policy promoting litigation and denying citizens the benefit of agreed resolutions of such fuel tax disputes.

Although the canon of avoiding absurd results is to be used sparingly, there is authority that "this court will avoid an absurd result even if it must disregard unambiguous statutory language to do so."[21] It would be an absurd result to promote litigation rather than agreed resolutions of fuel tax disputes between the State and federally recognized Indian tribes operating retail fuel stations on trust property.

The plain meaning of RCW 82.38.310(1) authorizes the negotiation of fuel tax disputes with all federally recognized tribes with a formal reservation or trust property operating retail fuel stations. It would be an absurd result to read the statute otherwise.[22]

---

[20] See LAWS OF 1995, ch. 320, § 1 ("all of the state citizens may benefit from resolution of these [fuel tax] disputes between the respective governments").

[21] Dependency of D.L.B., 186 Wn.2d 103, 119, 376 P.3d 1099 (2016); but see State v. Ervin, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) ("It is true that we presume the legislature does not intend absurd results and, where possible, interpret ambiguous language to avoid such absurdity.") (emphasis added).

[22] We need not address the Samish Tribe's other arguments offered in support of reversal.

Therefore, we reverse.

WE CONCUR: