IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LUKE DISTELHORST,<br><br>                  Respondent,<br><br>        v.<br><br>SCOTT F. ICEBERG,<br><br>                  Appellant. | No. 87843-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Scott Iceberg appeals entry of an antiharassment protection order restraining him and protecting Luke Distelhorst, arguing that the order violates his constitutional rights. Because we conclude that the order does not violate Iceberg's constitutional rights, we affirm.

BACKGROUND[1]

Luke Distelhorst served on the Board of Directors for the Housing Authority of Snohomish County (HASCO). During the time of the actions at issue, Iceberg received housing assistance through a Section 8 voucher program administered by HASCO.

Iceberg began sending communications to Distelhorst on January 21, 2025. Though Distelhorst did not know Iceberg personally, he surmised the communications were "apparently related to [Iceberg's] application denial to live as a tenant in a property owned by HASCO." On the night of January 21, 2025, around 8 p.m., Iceberg called

---

[1] The background facts are drawn from Distelhorst's petition to the trial court for an antiharassment order, which included the written communications from Iceberg. These facts are not disputed on appeal.

and left a voicemail on Distelhorst's work phone, which is unaffiliated with HASCO and not listed on HASCO's website. At 11:51 p.m., Iceberg wrote to Distelhorst's personal email address, "I'm going to be homeless soon due to HASCO's policies. As such, I will be living outside your house on the sidewalk. I'll be taking every opportunity to talk to neighbors about what a piece of shit you are...See you on the sidewalk rocking my first amendment rights." A few hours later, at 2:29 a.m., Iceberg texted the cell phone of one of Distelhorst's neighbors, pretending to be a fellow neighbor, and falsely accused Distelhorst of touching children inappropriately.

Iceberg also sent emails to other HASCO officials. One stated "you are going to have to evict my dead body from this apartment because I am going to commit suicide in this apartment." Another email stated, "if I blow my brains out here pretty quick due to your insane psychopathic machinations, should I have my estate contact you, or should I just summon you every night from the grave while you sleep? I'm not sure the procedure if I go ahead an[d] blow my brains out."

On January 24, 2025, Distelhorst filed a petition for an antiharassment protection order against Iceberg in Snohomish County Superior Court. The court entered a temporary antiharassment protection order on January 27, 2025. On February 10, a court commissioner denied Distelhorst's request for a full protection order, finding there was insufficient evidence as "[t]he conduct complained of may be protected speech." Distelhorst moved for revision of the commissioner's denial, which Iceberg opposed.

On March 5, 2025, the court held a hearing on the motion for revision. Iceberg did not appear at the hearing and Distelhorst appeared through counsel. The court granted the motion for revision and imposed an antiharassment protection order

2

protecting Distelhorst and restraining Iceberg. On the pattern form for the protection order, the court checked a box with a prewritten finding that stated

> Based upon the petition, testimony, case record, and response, if any, the court finds by a preponderance of evidence that the protected person . . . has proved the required criteria for the following protection order under chapter 7.105 RCW.
>  . . . .
>
> **[X] Antiharassment Protection Order-** The restrained person has subjected the protected person to unlawful harassment.

In a separate written order issued after the hearing, the court specifically found that Distelhorst's petition "presented a knowing and willful course of conduct directed at Petitioner that is not protected speech and is designed to harass, intimidate, instill fear, and get Petitioner to take action that would be beneficial to Respondent." The court also concluded that the complained-of conduct met the definition of unlawful harassment and stalking, and "would cause a reasonable person substantial emotional distress and did cause such distress to the Petitioner per his testimony in the Petition."

The order restrained Iceberg from harming, contacting, or stalking Distelhorst. The order also restrained Iceberg from coming within 1,000 feet of Distelhorst or his home, vehicle, workplace, and the HASCO office except as necessary for "voucher administration." Iceberg was ordered to get a mental health evaluation due to "[r]eferences to suicidal ideation, psychosis, and other mental health issues at hearing."

Iceberg appeals.

## DISCUSSION

As an initial matter, we note that Iceberg does not assign error to the trial court's findings that he subjected Distelhorst to unlawful harassment. Unchallenged findings of

3

fact are accepted as true on appeal. In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018).

Instead, Iceberg challenges the antiharassment protection order primarily on constitutional grounds. Iceberg argues that the protection order is unconstitutionally vague, unconstitutionally overbroad, and a prior restraint on his First Amendment rights. He also contends that Distelhorst was untimely in noting his motion for revision.

We review a trial court's decision to grant or deny an antiharassment protection order for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). A trial court abuses its discretion if its ruling is "manifestly unreasonable or is based on untenable grounds or reasons." State v. Rapozo, 114 Wn. App. 321, 323, 58 P.3d 290 (2002). A ruling is based on untenable grounds "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). We review issues of law, including constitutional challenges, de novo. Tyner v. State, 137 Wn. App. 545, 556, 154 P.3d 920 (2007).

I. Constitutional Claims

Iceberg argues that the antiharassment order restraining him and the underlying statute authorizing the order, chapter RCW 7.105, are unconstitutional because they are vague, overbroad, and a prior restraint on his speech.

To the extent that Iceberg raises a facial challenge to Washington's antiharassment protection order statute, we reject this challenge.[2] We presume a

---

[2] The antiharassment protection order was effective for one year from the date it was issued on March 5, 2025. Neither party has argued or provided briefing on whether this case is moot. "Generally, we will dismiss an appeal where only moot or abstract questions remain or where the issues raised in the trial court no longer exist." Price v. Price, 174 Wn. App. 894, 902, 301 P.3d 486 (2013). As an exception to the

statute is constitutional. City of Seattle v. Abercrombie, 85 Wn. App. 393, 400, 945 P.2d 1132 (1997). "The party challenging an enactment bears the burden of proving its unconstitutionality." State v. Immelt, 173 Wn.2d 1, 6, 267 P.3d 305 (2011). " '[A] successful facial challenge is one where *no set of circumstances exists* in which the statute, as currently written, can be constitutionally applied.' " State v. Gantt, 29 Wn. App. 2d 427, 435, 540 P.3d 845 (2024) (emphasis in original) (quoting City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)). Washington courts have upheld antiharassment orders against First Amendment constitutional challenges.[3] See, e.g., State v. Noah, 103 Wn. App. 29, 33-34, 9 P.3d 858 (2000) (rejecting claim that antiharassment order imposed unconstitutional prior restraint of speech). Thus, Distelhorst's facial challenge to the statute fails because there are circumstances in which the statute can be constitutionally applied.

Regarding Iceberg's as-applied challenges, we can discern from his briefing only limited arguments specifically about the order entered against him.[4] These arguments also are unavailing.

---

mootness doctrine, we may decide issues of continuing and substantial interest. Thomas v. Lehman, 138 Wn. App. 618, 622, 158 P.3d 86 (2007). " 'The continuing and substantial public interest exception has been used in cases dealing with constitutional interpretation, the validity of statutes or regulations, and matters that are sufficiently important to the appellate court.' " In re the Welfare of C.W.M., 27 Wn. App. 2d 747, 754, 533 P.3d 1199 (2023) (quoting State v. Beaver, 184 Wn.2d 321, 331, 358 P.3d 385 (2015)). Because Iceberg raises a constitutional challenge to the validity of Washington's antiharassment protection order statute, we exercise our discretion to address the merits of the appeal.

[3] The antiharassment order in Noah was issued under the former antiharassment statute, the former chapter 10.14 RCW. However, the definitions of "unlawful harassment" and "course of conduct" at issue in this case are substantively unchanged in the current statute. Compare former RCW 10.14.020 (1999), repealed by LAWS OF 2021 ch. 215, § 170, with RCW 7.105.010(37)(a) and (7).

[4] Distelhorst argues that we should not consider Iceberg's "appeal brief as containing serious arguments, as it is plagiarized from a law review article that was published before the statute at issue was even enacted, and fails to actually address the record or applicable law in this case." Iceberg's brief in large part copies text from a law review article by Aaron H. Caplan, Free Speech and Civil Harassment Orders, 64 Hastings L.J. 7811, 803-26 (2013). However, regardless of whether Distelhorst's characterization of Iceberg's brief is accurate, his complaint that it is plagiarized is not helpful to our analysis on the merits.

First, Iceberg argues that the order is unconstitutionally vague because it does not "define[ ] what constitutes harassment, nor what Mr. Iceberg did specifically to 'harass' Mr. Distelhorst in the first place." In the trial court's written findings, to which Iceberg did not assign error, it used the statutory definition of "unlawful harassment" in concluding that Iceberg's conduct was unlawful harassment. The statute defines "unlawful harassment" as

> A knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

RCW 7.105.010(37)(a). Iceberg fails to acknowledge or challenge this statutory definition.[5] Because the trial court's findings track the statutory language, we analyze whether that language is unconstitutionally vague.

A statute is void for vagueness if it is so vague that persons " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " Abercrombie, 85 Wn. App. at 399 (quoting Haley v. Medical Disciplinary Bd., 117 Wn.2d 720, 730-40, 818 P.2d 1062 (1992) (quoting Connally v. General Constr. Co, 269 U.S. 385, 391 (1926)). But some measure of vagueness is inherent in the use of language. Abercrombie, 85 Wn. App. at 399. Thus, impossible standards of specificity are not required. Id. A statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would

---

[5] Iceberg argues that the trial court relied on RCW 7.105.010(37)(b) of the "unlawful harassment" definition "[a] single act of violence of threat of violence," but it is clear from the antiharassment order and the trial court's accompanying written order, quoted in the previous section, that it found a "knowing and willful course of conduct" under subsection (a) and issued the antiharassment order on that basis. Iceberg's argument regarding subsection (b) of the definition is thus unpersuasive.

be classified as prohibited conduct. Id. at 399-400.

The statutory definition, and, thus, the court's order, is not so vague that persons of common intelligence must necessarily guess at its meaning. Id. at 399. Here, the trial court's written order found that Iceberg's "complained-of conduct in the Petition meets the definition of Unlawful Harassment by substantial evidence, i.e., more than a preponderance of evidence." Distelhorst's petition, as described above, detailed Iceberg's exact communications that the trial court found constituted unlawful harassment. The trial court clearly identified Iceberg's conduct that constituted unlawful harassment of Distelhorst.

Iceberg further argues that the order is unconstitutionally vague because it forbids him "from engaging in any future stalking, harassment, threats, cyber-harassment, etc. of a government official—without specifying what they are." But the antiharassment protection order itself describes the prohibited conduct in each restrained category. Iceberg fails to acknowledge or challenge these descriptions. Therefore, Iceberg fails to meet his burden to prove that that the order against him is unconstitutionally vague.

Next, Iceberg argues that the order is overbroad because he "has a First Amendment right to speak to Mr. Distelhorst's neighbors, co-workers, and to post about Mr. Distelhorst on the internet." "A statute or ordinance is overbroad if it sweeps constitutionally protected free speech activities within its prohibitions and there is no way to sever its unconstitutional applications." Abercrombie, 85 Wn. App. at 397. But Iceberg fails to identify any restraint in the order that prohibits his protected speech to Distelhorst's neighbors or co-workers or online. The order properly prohibited Iceberg

7

from engaging in *unlawful* harassment of Distelhorst via communications with his neighbors, co-workers, or online. Iceberg does not meet his burden to show the antiharassment order is overbroad.

Finally, Iceberg argues that the restraints imposed on him constitute a prior restraint because he "wants to protest on the public right of way in front of HASCO. Mr. Iceberg wants to protest on the public right of way in front of Mr. Distelhorst's home. Mr. Iceberg wants to freely associate with Mr. Distelhorst's neighbors. Mr. Iceberg wants to post about Mr. Distelhorst online."

Prior restraints are " 'official restrictions imposed upon speech or other forms of expression in advance of actual publication.' " State v. Coe, 101 Wn.2d 364, 372, 679 P.2d 353 (1984) (quoting Seattle v. Bittner, 81 Wn.2d 747, 756, 505 P.2d 126 (1973)). The only Washington case Iceberg cites in support of his prior restraint argument is In re Marriage of Suggs, 152 Wn.2d 74, 93 P.3d 161 (2004). There, the court held that an antiharassment order's provision restraining an individual from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming [petitioner] and for no lawful purpose" was an unconstitutional prior restraint. Id. at 81. The court reasoned this provision was a prior restraint because it "lack[ed] the specificity demanded by the United States Supreme Court for prior restraint on unprotected speech. Indefinite wording . . . leaves us unable to ascertain what speech the order actually prohibits." Id. at 84.

By contrast, in Noah, we upheld no-contact provisions in an antiharassment order, holding that the provisions were not an unconstitutional prior restraint, reasoning

as follows:

> Protecting citizens from harassment is a compelling state interest. The legislature authorizes the court to order that the defendant have no contact with his intended victim . . . . The statute is content neutral—no contact—whether profession of love, screams of hate or anything in between. The interest to be served is the safety, security, and peace of mind of the victim. It is narrowly tailored by focus on the victim and a no contact zone around the victim.

103 Wn. App. at 41-42.

In contrast to the order in Suggs, the order here does not restrain Iceberg's future protected speech. Rather, the order regulates Iceberg's conduct. Iceberg remains free to protest, freely associate, and post online as long as he does not contact (including indirectly through third parties), harm, harass, or stalk Distelhorst, or violate the mandated 1000-foot physical buffer around Distelhorst, his residence, or the HASCO office, except as necessary for voucher administration. As in Noah, where we upheld analogous no-contact provisions, here, the antiharassment order is content neutral and narrowly tailored to focus on Distelhorst and a no contact zone around him. Iceberg has not established an unconstitutional prior restraint.

We conclude that the trial court acted within its discretion in issuing the antiharassment order against Iceberg. The statute is neither unconstitutional on its face nor as applied to Iceberg.

## II. Procedure for Noting a Hearing on Motion for Revision

Iceberg argues that the trial court "lacked jurisdiction" to hear the motion for revision because Distelhorst failed to comply with Snohomish County Local Court Rule (SCLCR) 7(b)(2)(d)(12) by not timely filing and serving a completed calendar note on his motion for revision. SCLCR 7(b)(2)(d)(12)(a) states: "A party seeking revision of a

9

commissioner's order shall, within the time specified by statute, file and serve on all other parties a motion and completed calendar note."

On February 20, 2025, Distelhorst filed a motion for revision and served it on Iceberg that day, within the 10-day period specified by RCW 2.24.050. The record reflects that a hearing date was already on the court's calendar based on a separate motion Iceberg had filed the same day as Distelhorst's motion for revision. Upon confirming that the already-scheduled hearing date reflected Iceberg's separate motion, on February 25, 2025, Distelhorst noted his motion for revision for a hearing for March 5, 2025, and served Iceberg with the calendar note. The trial court found that Iceberg had notice of the March 5, 2025, hearing because he was properly and timely served, with proof of service in the record.

Iceberg fails to identify any prejudice that resulted from Distelhorst's delay in noting the hearing on his motion for revision. Nor does he identify any legal authority supporting his argument that a delay in noting a motion deprives the trial court of jurisdiction; as Distelhorst argues, we have previously reasoned to the contrary. E.g., Buckner, Inc. v. Berkey Irrigation System, 89 Wn. App. 906, 915, 951 P.2d 338 (1998) ("Noting the motion thus primarily serves to prompt the court to hear or consider the motion. But the ultimate timing of the court's consideration of the motion is at the court's discretion. Nowhere is there any suggestion that the failure to timely note the motion deprives the trial court of the power to hear and decide it." (footnote omitted)). The trial court did not lack jurisdiction to hear the motion for revision.

III.  Fees on Appeal

Both parties request attorney fees on appeal. Iceberg represented himself and

cites no applicable law granting him the right to recover attorney fees. Accordingly, we decline his request.

Distelhorst requests attorney fees pursuant to RCW 7.105.310(j), which gives "broad discretion to grant such relief as the [trial] court deems proper," including reimbursement to "the petitioner for costs incurred in bringing the [civil protection order] action, including reasonable attorney[ ]fees." Accordingly, " '[i]f such fees are allowable at trial, the prevailing party may recover fees on appeal as well.' " Sullivan v. Schuyler, 31 Wn. App. 2d 791, 814, 556 P.3d 157 (2024) (quoting Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001)). We exercise our discretion to deny Distelhorst's request for fees on appeal.

CONCLUSION

We affirm.

_Chung, J._

WE CONCUR:

_Díaz, J._

_____, ACJ