158 P.3d 86 (2007)
Glen E. THOMAS, Appellant,
v.
Joseph LEHMAN, Gary Fleming, Department of Corrections, Respondent.
No. 34409-2-II.
Court of Appeals of Washington, Division 2.
May 15, 2007.
*87 Glen E. Thomas, (Appearing Pro Se), Monroe, WA.
Douglas Wayne Carr, Atty. General's Office, Olympia, WA, for Respondent.

PART PUBLISHED OPINION
HUNT, J.
¶ 1 Glen E. Thomas appeals the trial court's summary judgment dismissal of his 42 U.S.C. § 1983 civil rights action against the Washington Department of Corrections (DOC). He argues that the trial court erred in granting summary judgment to the State because the DOC violated his constitutional rights when it (1) denied his request to withdraw funds from his inmate savings account, (2) failed to credit his inmate savings account with interest, (3) refused to grant his motion for assistance of counsel from a fellow inmate, and (4) failed to make sure that he could clearly hear the summary judgment arguments via his telephone connection. We affirm.

FACTS
¶ 2 Glen E. Thomas is an inmate at the Monroe Corrections Complex, Twin Rivers Unit. On June 18, 2004, he requested permission to withdraw $2,000 from his personal inmate savings account (PISA) to pay his attorneys fees for an upcoming ".100 parole hearing."[1] RCW 72.09.111 directs the DOC to maintain PISAs and to distribute funds to inmates upon their release or for "emergencies," as determined by the DOC secretary. RCW 72.09.111(3). Superintendent Gary Fleming denied Thomas's request because Thomas was not going to use the funds for community transition upon his release or for an "emergency."
¶ 3 Thomas filed a 42 U.S.C. § 1983 civil rights complaint against the DOC, DOC Secretary Joseph Lehman, and Superintendent of the Monroe Corrections Complex Gary Fleming. Pro se, Thomas alleged that the DOC had (1) committed constitutional violations by refusing to release $2,000 he requested from his PISA, and (2) had converted his personal funds, namely interest on the full amount in his PISA.
¶ 4 Thomas and the DOC filed cross motions for summary judgment. The DOC argued that Superintendent Fleming had correctly determined that Thomas's professed need to pay for counsel to represent him at the parole hearing was not an emergency *88 because Thomas had sufficient funds outside the DOC institution to pay these attorney fees. At the summary judgment hearing, Thomas, acting pro se and appearing via telephone, asked the trial court to allow a fellow inmate to provide him legal assistance. The trial court denied this request because it was filed late under CR 6.[2] During the hearing, Thomas complained several times about his inability to hear the proceedings via his telephonic connection.
¶ 5 Finding no genuine issue of material fact, the trial court ruled that (1) the DOC had acted within its discretion under RCW 72.09.111(3) when it denied Thomas's request to withdraw funds from his PISA, even though there is no statutory or administrative definition of "emergency"; and (2) the DOC is not required to place PISAs in individual interest-bearing accounts.
¶ 6 Thomas appeals.

ANALYSIS

I. MOOTNESS
¶ 7 We first address the DOC's threshold argument that Thomas's appeal from its denial of his request for PISA funds is moot because he used other financial sources to hire an attorney to represent him at his release-eligibility hearing. Although Thomas's complaint for damages and an injunction is moot,[3] his request for declaratory relief would benefit other similarly situated inmates.
¶ 8 We may decide a moot issue if it involves matters of continuing and substantial public interest. In re Pers. Restraint of Mines, 146 Wash.2d 279, 285, 45 P.3d 535 (2002). To determine whether a case involves the requisite public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur. Id. at 285, 45 P.3d 535. The facts here weigh in favor of our review, especially in light of the probability that if another inmate makes a similar request, his appeal would also be moot before the issue would reach us on appeal.
¶ 9 Accordingly, we consider Thomas's claim for declaratory relief.[4] The parties characterize the issue of whether the DOC erroneously denied Thomas's PISA fund request as involving governmental taking, due process, and statutory interpretation. Nonetheless, we first address the underlying statutory issuewhether the DOC properly exercised its discretion that the Legislature granted it under RCW 72.09.111(3).

II. INMATE ACCESS TO PISA FUNDS
¶ 10 Thomas argues that we should reverse the trial court's summary judgment dismissal of his lawsuit against the DOC because the trial court erred in failing to recognize his right to use his property, i.e., his PISA funds, to hire counsel for an upcoming release-eligibility hearing. The DOC responds that the trial court properly applied the "reasonable definition" of "emergency" when it reviewed the DOC's exercise of its statutory discretion (1) in determining that Thomas's request for PISA funds was not an "emergency" under RCW 72.09.111(3); and (2) in denying his request for access to his PISA funds.

A. Standard of Review
¶ 11 Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to *89 judgment as a matter of law. CR 56(c). The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Id.

B. Legislative Background
¶ 12 In 1995, the Washington Legislature enacted RCW 72.09.460, which requires all DOC inmates to participate in both education and work programs. RCW 72.09.460(1). The Legislature intended this act to meet several objectives: (1) to defer increasing incarceration costs; (2) to create incentive programs for inmates to gain privileges through their education and work progress; (3) to allow inmates to obtain transferable skills for use after release from incarceration; and (4) "to assure that the department fulfills its mission to reduce offender recidivism, to mirror the values of the community by clearly linking inmate behavior to receipt of privileges, and to prudently manage the resources it receives through tax dollars." RCW 72.09.450, Findings-Purpose.
¶ 13 To advance these objectives, the Legislature provided that the DOC would deduct from each inmate's wages any amounts he owed to the crime victims' compensation fund, the inmate's incarceration costs, and his legal financial obligations owing to Washington State superior courts.[5] RCW 72.09.111(1). The Legislature further planned that after these deductions, the DOC would generally hold an inmate's PISA funds, with any accrued interest, to disperse to him at the time of his release from confinement. RCW 72.09.111(3). Clearly, the Legislature did not intend inmates to have unfettered, immediate access to their wages during their incarceration.

C. "Emergency" Exception
¶ 14 The Legislature did, however, carve out an exception to the general rule that the DOC was to hold inmate PISA funds for dispersal on release from confinement where "the [DOC] secretary determines that an emergency exists for the inmate, at which time the funds can be made available to the inmate in an amount determined by the secretary." RCW 72.09.111(3) (emphasis added). But, as both parties note, the Legislature did not define "emergency" within the RCW 72.09.111(3) context. Thus, central to this appeal is the question of what constitutes such an "emergency" for purposes of inmate access to PISA funds before release under RCW 72.09.111(3).
¶ 15 But neither party has cited any applicable case law or any Washington Administrative Code regulation defining this type of "emergency" or the parameters of the DOC secretary's discretion when determining whether an inmate's pre-release request for access to his PISA constitutes an "emergency" falling within this statutory exception under 72.09.111(3).[6] Nor has our research revealed any such case law or administrative code provision. Thus, we address an issue of first impression.

D. DOC Discretion
¶ 16 At the outset, we explore the obvious possibility that, by its silence in defining "emergency," the Legislature implicitly delegated *90 to the DOC the discretion to decide what constitutes an "emergency" and to determine whether there exists an "emergency" for a particular inmate seeking access to his PISA funds before his release from confinement.
¶ 17 The Legislature has the power to vest a public officer with discretion to grant or to deny applications in various situations. Nonetheless, public officers must exercise this discretion within legal bounds; they cannot exercise it arbitrarily, capriciously, fraudulently, or without a factual basis sufficient to justify denial of an application. McDonough v. Goodcell, 13 Cal.2d 741, 747-48, 91 P.2d 1035 (1939). See also 2 AM.JUR.2D Administrative Law § 59 (1998). In short, administrative discretion may be exercised only according to fair and legal considerations. Housing Auth. of Opelousas v. Pittman Constr. Co., 264 F.2d 695, 703 (5th Cir.1959). See also Sec'y of Agric. v. Cent. Roig Ref. Co., 338 U.S. 604, 613-14, 70 S.Ct. 403, 94 L.Ed. 381 (1950).
¶ 18 Courts generally limit review of an agency's independent decision to the agency's decision-making process. Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 407-09, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), cert. denied, 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975). We first note that Thomas's request to withdraw $2,000, of the $7,935.78 in his PISA, complied with the procedure in DOC policy directive 200.710.[7] Thomas's community correctional officer forwarded Thomas's PISA funds request to Superintendent Fleming, along with a second letter from Thomas explaining why he needed access to these funds.[8] The DOC does not contend that Fleming considered any information other than these two letters; nor does it contest that Thomas's PISA contained $7,935.78 when Fleming denied Thomas's request.[9] Fleming's explanation for denying Thomas's request was simply, "[N]ot spent on transition nor emergent (sic)." Clerk's Papers at 29.
¶ 19 We know from Thomas's request for fundsto pay for an attorney to represent him at a "parole board" hearing, at which he hoped to obtain his releasethat these funds were not for "transition," i.e., funds to use on his release from confinement. Thus, the record clearly supports Fleming's first ground for denying Thomas's request.
¶ 20 The record also supports Fleming's second ground for denying Thomas's requestno emergencybecause Thomas had access to funds other than his PISA account, which funds he did, in fact, use to hire an attorney to represent him at his release-eligibility hearing. Thus, Thomas had no arguable "emergency" or "need"[10] to access his PISA funds, which might have been the case had he not had other funds available.[11] Accordingly, we deny Thomas's request for *91 declaratory relief and affirm the trial court's summary judgment dismissal of his action.

III. PISA "INTEREST"
¶ 21 Thomas next argues that the trial court erred in allowing the State to commit an unconstitutional taking of interest that had accrued on his PISA, the subject of his § 1983 action, when (1) it failed to recognize the doctrine that interest follows principal; and (2) it ruled, based on Dean v. Lehman, 143 Wash.2d 12, 34, 18 P.3d 523 (2001), that the DOC had no duty to place inmate funds in an interest bearing account, that the DOC did not in fact place funds in an interest-bearing account, and that, therefore, no interest accrued or was owing on Thomas's PISA account.
¶ 22 We have already held that Thomas was not entitled to access his PISA funds under the facts here. Nor has he demonstrated that, contrary to the DOC's explanation, that there is any accrued interest on his PISA funds due and owing to him. That Thomas wishes the DOC would place his PISA funds in an interest-bearing account does not establish a governmental "taking" of property that does not exist.
¶ 23 Accordingly, we affirm.
¶ 24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG, P.J., and PENOYAR, J.
NOTES
[1] A ".100 parole hearing" refers to eligibility hearings for release from confinement. See WAC 381-40-100; RCW 9.95.100. According to DOC parole eligibility procedures, an inmate may petition for parole under RCW 9.95.100. See also WAC 381-60-030. If the superintendent of the institution opines that the inmate is not fit for release, the DOC may require the Indeterminate Sentence Review Board conduct a hearing pursuant to RCW 9.95.100. WAC 381-60-040. If such a hearing occurs, the inmate is entitled to notice, WAC 381-60-060, and has the right to present evidence and witnesses, as well as have an attorney present at his own expense. WAC 381-60-070.
[2] Thomas filed the request two days before the hearing instead of the required five.
[3] Because the release-eligibility hearing is over, an injunction would be moot. Thomas has not alleged ascertainable damages, rendering this claim moot also. Moreover, he was represented by counsel at the hearing. See In re the Detention of Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983) ("A case is moot if a court can no longer provide effective relief.").
[4] In so doing, however, we do not consider and, instead, reject the DOC's assertion that public officials are immune from 42 U.S.C. § 1983 civil rights actions. Neither absolute nor qualified immunity extends to § 1983 suits for declaratory relief such as this one. See, e.g., Orellana v. Kyle, 65 F.3d 29, 33 (5th Cir.1995), cert. denied, 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996); Chrissy F. v. Miss. Dep't of Pub. Welfare, 925 F.2d 844, 849 (5th Cir.1991).
[5] The Legislature also directed the DOC to deduct ten percent from inmate wages earned in Classes I & II work programs for deposit in mandatory inmate savings accounts, i.e., PISAs. RCW 72.09.111(1).
[6] Title 137 of the Washington Administrative Code details the DOC's adopted regulations, but none address what constitutes an "emergency" for these purposes. See Title 137 WAC. The record includes a DOC policy directive, DOC 200.710, implementing RCW 72.09.111 and 72.09.480. This directive comes closer to defining "emergency" in its use of the clause "need for an exception to the prohibitions on access to mandatory savings account funds." But it does not set parameters for the secretary's exercise of discretion in determining whether the inmate has such a "need" or an "emergency."

DOC 200.710 directive states:
If the Office of Correctional Operations (OCO) Deputy Secretary determines there is a need for an exception to the prohibitions on access to mandatory savings account funds, s/he may make funds available to the offender. The OCO Deputy Secretary shall determine the amount of funds the offender may withdraw from his/her mandatory savings account.
Clerk's Papers (CP) at 26 (emphasis added).
[7] See n. 6.
[8] Thomas's letter explained:

I have talked to my Risk Mgmt Team who pointed out that I have just over $2500 spendable [sic] funds in my account. I discussed with my CUS that I have been paying John Payseno another attorney to handle a family matter for me and have paid him just over $3700 to date. He bills me by monthly which is why I don't want to use my spendable [sic] balance as I will be unable to pay him. I also had funds on account with Leta Schattauer who will be representing me at the .100 hearing, but I had to send that money to John as well.
Basically, I need to keep the funds I have to pay ongoing legal expenses leaving me primarily with the money in my savings account to pay for the .100 representation. Al Stickney thought you would need to know this information to process my request for the funds in my savings account.
CP at 31.
[9] For example, it does not appear from the record before us that there were any outstanding encumbrances, such as statutorily authorized deductions, on Thomas's PISA funds. Nor do the DOC's briefs indicate that Superintendent Fleming considered any debts Thomas owed the DOC.
[10] See DOC directive 200.710; text in n. 6.
[11] The facts of Thomas's case do not present a related issue, which we leave for another day-whether an inmate's non-constitutional right to use his own funds to hire an attorney to represent him at a parole review hearing, WAC 381-60-070(3), can constitute an "emergency" for a particular inmate, under RCW 72.09.111(3), if he has no access to other funds and, consequently, could not otherwise hire an attorney for a parole hearing if the DOC Secretary denied that inmate's request to use his PISA funds for this purpose.