# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No.  50361-1-II |
| Respondent, | |
| v. | |
| LORNA YOUNG a/k/a LORINA YOUNG and "JOHN DOE" YOUNG, husband and wife and the marital community composed thereof; and COLIN F. YOUNG and "JANE ROE" YOUNG, husband and wife and the marital community composed thereof, | UNPUBLISHED OPINION |
| Appellants. | |
| and | |
| IN THE MATTER OF JUNK VEHICLES AND NUISANCE AND UNPERMITTED CONDITIONS LOCATED AT One 13.1-acre Parcel in the 25800 Block of Big Valley Road NE, Poulsbo, Washington (Kitsap County Tax ID No. 262701-4-010-2004). | |

LEE, A.C.J. — Lorna and Colin Young appeal the superior court's denial of their CR

41(b)(1) motion to dismiss, issuance of a preliminary injunction, and order granting summary

No. 50361-1-II

judgment in favor of Kitsap County.[1]  The Youngs argue that the superior court (1) erred when it denied their CR 41(b)(1) motion to dismiss, (2) abused its discretion when it issued the preliminary injunction, and (3) erred when it granted summary judgment in favor of the County.  The Youngs' claims fail, and we affirm.

FACTS

A.    THE PROPERTY

Lorna[2] owns a piece of property in unincorporated Kitsap County..  The property contained a number of vehicles and vehicle parts, owned by Colin, Lorna's son.  The vehicles and vehicle parts were visible from the road and neighboring properties.  The property did not have approval as a vehicle lot or for junk vehicle storage.

In 2011, Colin owned the property and quitclaimed the property to Lorna.  The County subsequently brought an administrative action to abate a public nuisance against Lorna due to the conditions on the property.  The hearing examiner found that two of the vehicles stored outside on the property were junk vehicles and that no mitigation agreement was in place.  The hearing examiner also found that the conditions on the property constituted a public nuisance due to the

---

[1] The Youngs also assign error to the superior court's denial of their motions to reconsider the order denying their motion to dismiss, the superior court's failure to hear their show cause motion, and the superior court's findings of fact 5-12 and 14-16 in the preliminary injunction order. However, they fail to provide any argument or authority regarding these assignments of error. We will not address claims unsupported by argument and citation to legal authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  Therefore, we decline to address these claims.

[2] Because multiple parties share the same last name of Young, we use first names for clarity.  We intend no disrespect.

2

storage of junk vehicles and use of the property as an unapproved vehicle lot. The hearing examiner ordered Colin to correct the violations.

B.      COUNTY COMPLAINT AND MOTION FOR INJUNCTION

On May 17, 2012, the County filed a complaint for an injunction, declaratory judgment, and abatement of nuisance against the Youngs.

The County sought to enjoin the Youngs from using the property until the property was brought in compliance with applicable regulations and no longer constituted a public nuisance. The injunction would require the Youngs to remove all vehicles, parts, and solid wastes from the property and require the Youngs to remove all potentially hazardous and uncontained solid wastes from the property. The injunction would also authorize the County to erect a fence to prevent the unauthorized movement of vehicles, parts, or solid wastes on or off the property and to prohibit any person from placing a vehicle on the property unless allowed by law. And the Youngs would be enjoined "from further violating the Kitsap County Code [(KCC)] and applicable state law at the [p]roperty or as a result of unlicensed vehicle wrecking or other unlicensed and unauthorized business activities whether conducted at the [p]roperty in this case or any property subject to the [KCC]." Clerk's Papers (CP) at 14.

The County further sought a warrant of abatement to enter the property to take necessary action to abate the nuisance.

C.      MOTION FOR PRELIMINARY INJUNCTION

The County also filed a motion for a preliminary injunction. The County sought to enjoin the nuisance conditions and violations of the KCC resulting from the continued storage of the vehicles on the property. The County included declarations from Stephen Mount, the code

compliance supervisor for the Kitsap County Department of Community Development (DCD), and Neil Wachter, a senior Kitsap County deputy prosecutor. Mount's declaration stated that the property was located in the rural protected zone of unincorporated Kitsap County and that no land use approvals had ever been issued for the property to operate as a vehicle storage lot. Mount participated in a flyover of the property during which he saw 60 or more vehicles stored outside on the property. Wachter's declaration included a quitclaim deed for the property from Colin to Lorna, showing that the property was located in Kitsap County and was assigned a single tax parcel number.

On May 24, the Youngs filed a response brief opposing the preliminary injunction arguing that there was no immediate threat to public safety and the scope of the proposed injunction was overbroad. And in his declaration in support of the motion, Colin claimed that the vehicles on the property were not junk vehicles. Colin also claimed that some of the vehicles on the property had been the target of vandalism and theft, with parts stolen from them making them inoperable, and that keys to several vehicles on the property had been stolen and not been recovered, and he needed the keys to move the vehicles.

On May 30, the superior court issued a preliminary injunction after holding a hearing on the matter. The superior court found that there were more than 60 vehicles on the property, a majority of which met the statutory definition of junk vehicle. Therefore, there was a likelihood of an imminent or actual injury based on the ongoing public nuisance condition.

On June 11, the Youngs filed a motion for reconsideration or clarification of the preliminary injunction. Colin's declaration in support of the motion challenged a number of the County's alleged factual assertions, including Mount's assertion on the result of a previous

4

abatement action in Mason County Superior Court, Mount's assertion on the existence of prior findings that Colin was operating a wrecking yard at the property, and the County's assertion on the effect of a 2005 Mason County Superior Court order.

On June 18, the superior court denied the Youngs' motion for reconsideration, but clarified and amended the preliminary injunction order. No further action was taken by either party in the case for over a year.

D.      NOTICE OF DISMISSAL AND SUMMARY JUDGMENT MOTION

On October 3, 2013, the superior court clerk filed a notice of dismissal for want of prosecution. The notice stated that no action of record had been taken in the past 12 months and that the case would be dismissed pursuant to CR 41(b)(2), unless within 30 days a party takes action of record or files a status report.

On November 4, the County filed a motion for summary judgment. The motion sought a permanent injunction against the Youngs and an order directing the issuance of a warrant of abatement.

E.      YOUNGS' MOTION TO DISMISS AND MOTION TO CONTINUE

On December 9, the Youngs filed a motion to dismiss pursuant to CR 41(b)(1) for want of prosecution. The Youngs argued that more than a year had passed since the last action in the case was taken on June 18, 2012.

On December 23, the superior court denied the motion to dismiss because the preliminary injunction dissipated all joined issues and the time period for CR 41(b)(1) did not commence again because no new issues were joined.

F. AMENDED MOTION FOR SUMMARY JUDGMENT

On September 2, 2016, the County filed an amended motion for summary judgment with updated information on the conditions of the property.

In support of the motion, Mount declared that the property "continues to be populated with several dozen vehicles" and that, to the best of his knowledge, the Youngs had not obtained any permits for the property. CP at 542. On March 3, 2016, Mount visited a neighboring property and was allowed to view all the open fields of the Youngs' property. Mount compared photographs of the Youngs' property in 2016 to photos from 2011, 2012, and 2013, and he could see that many of the vehicles had not been moved for over four years. The declaration also included attached pictures taken from a neighboring property, which showed the presence of more than 20 vehicles on the property. Specifically, the pictures showed at least 10 vehicles on the property had not moved for at least five years, a vehicle had not moved for at least four years, and another vehicle had not moved in at least three years.

Mount also explained that the "vehicles on the [p]roperty [were] easily visible from both the neighboring properties and from NE Big Valley Road" and that the "vehicles [were] located outdoors, and are not behind any sort of screening or fencing." CP at 544. And "many of the vehicles [were] located within 250 feet of the property line." CP at 544. Mount also claimed that "neither Ms. Lorna Young nor [Colin] have . . . attempted to enter into an environmental mitigation agreement as required." CP at 544.

On October 7, Colin filed his answer and affirmative defenses to the County's original complaint. On October 10, the Youngs filed separate responses to the amended motion for summary judgment. Colin's declaration in support stated that Colin had reviewed Mount's

declaration. Colin asserted that Mount presented no facts on the condition, value, and operability of the vehicles that could be confirmed. Colin also asserted that the property was screened by trees year round from adjacent properties and that rows of trees screened the vehicles on the property. And Colin claimed that Kitsap County parcel maps are often off by 10 feet. Colin also moved to strike evidence from consideration on summary judgment and moved to continue the summary judgment to allow him to conduct additional discovery. The superior court granted the motion to continue the hearing on summary judgment.

G.     SUMMARY JUDGMENT HEARING AND ORDER

On January 30, 2017, the superior court held a hearing on the County's amended motion for summary judgment. The superior court granted the County's motion for summary judgment. The superior court issued a judgment, stating,

> 1.     It is hereby declared that the conditions of the [p]roperty including storage of junk vehicles and vehicle parts in violation of both the Kitsap County zoning and nuisance codes, Title 17 KCC and Chapter 9.56 respectively, as well as the unpermitted use of the property as a vehicle lot, constitute a public nuisance.

CP at 728. The superior court based its decision on collateral estoppel from the 2011 hearing examiner determination and independently based on the facts in the record demonstrating a public nuisance.

The superior court also issued a permanent injunction, stating,

> 3.     A permanent, mandatory and prohibitive injunction is hereby issued enjoining land use of the [p]roperty in violation of Title 17 [KCC] (zoning), including but not limited to the accumulation or storage of vehicles and vehicle parts on the [p]roperty;
> 4.     A permanent, mandatory and prohibitive injunction is hereby issued enjoining land use of the [p]roperty in violation of Chapter 9.56 [KCC] (public nuisance), including but not limited to the accumulation or storage of junk vehicles

and vehicle parts on the [p]roperty and the use of the [p]roperty as a vehicle lot without approved land use.

CP at 728. The superior court stated, "There is clear and equitable right, a well-branded[3] fear of invasion of that right and, in fact, in this case it is an actual invasion of the right to be free of public nuisance. And also that the acts complained of result in or will result in actual and substantial injury." CP at 749-50. The superior court further authorized issuance of a warrant of abatement to effectuate the injunctive relief ordered.

The Youngs moved for reconsideration of the summary judgment order. The superior court denied reconsideration.

The Youngs appeal.

ANALYSIS

A. MOTION TO DISMISS

The Youngs argue that the superior court erred when it denied their CR 41(b)(1) motion to dismiss for want of prosecution because CR 41(b)(1) applies and the County failed to note the case for trial or hearing within one year after issues were joined. We disagree.

The dismissal of an action for want of prosecution is in the discretion of the court absent a guiding statute or court rule. *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 174 Wn.2d 304, 308, 274 P.3d 1025 (2012). A superior court has inherent authority to dismiss an action for want of prosecution only where the dilatoriness is a type not described by CR 41(b)(1). *Foss Mar. Co. v. City of Seattle*, 107 Wn. App. 669, 674, 27 P.3d 1228 (2001).

---

[3] We take this to mean "well-grounded."

Dismissal for want of prosecution is mandatory if CR 41(b)(1) applies. *WaferTech*, 174 Wn.2d at 308. Under CR 41(b)(1), a defendant may move the court for dismissal of an action for failure of the plaintiff to prosecute. CR 41(b)(1) provides,

> Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross claimant, or third party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. If the case is noted for trial before the hearing on the motion, the action shall not be dismissed.

We review the application of a court rule de novo. *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012). If a superior court errs in denying a CR 41 motion to dismiss for want of prosecution, then the proper remedy is to remand to the superior court for dismissal. *State ex rel. Goodnow v. O'Phelan*, 6 Wn.2d 146, 154, 106 P.2d 1073 (1940).

1.      Application of CR 41(b)(1) and Time Limit

The Youngs argue that the superior court erred when it denied their CR 41(b)(1) motion to dismiss because issues of law and fact were joined by their responsive filings on May 24, 2012 and June 11, 2012 and were left undissipated; thus, the one-year time limit under CR 41(b)(1) had commenced and continued to run when they moved to dismiss. We disagree.

If no issue of law or fact is joined, then CR 41(b)(1) does not apply. *State ex rel. Wash. Water Power Co. v. Superior Court for Chelan County*, 41 Wn.2d 484, 489, 250 P.2d 536 (1952). An issue of law or fact arises whenever "'in the progress of a legal action . . . it becomes necessary and proper to decide a question of law or a question of fact.'" *Wash. Water Power*, 41 Wn.2d at 489 (quoting *O'Phelan*, 6 Wn.2d at 150). Every case moves in and out of the operation of the time limit fixed by CR 41 as issues of law or fact are raised and decided. *Wash. Water Power*, 41 Wn.2d

9

at 489-90. Once the time begins to run, it is terminated when the issue raised is dissipated and starts anew when another issue is raised. *Wash. Water Power*, 41 Wn.2d at 490.

Here, CR 41 does not apply as the issues raised by the Youngs were dissipated and no additional issues were raised or joined to start the time under CR 41 anew. An issue of law or fact arises whenever "'in the progress of a legal action . . . it becomes necessary and proper to decide a question of law or a question of fact.'" *Wash. Water Power*, 41 Wn.2d at 489 (quoting *O'Phelan*, 6 Wn.2d at 150).

First, the issues raised by the Youngs' responsive brief opposing the preliminary injunction and attached declaration were dissipated by the superior court's preliminary injunction. On May 17, 2012, the County filed a motion for a preliminary injunction. On May 24, 2012, the Youngs filed a responsive brief opposing the preliminary injunction and included Colin's declaration. The brief and declaration challenged the propriety of issuing a preliminary injunction, arguing that there was no immediate threat to public safety, that the scope of the proposed injunction was overbroad, and that the vehicles on the property were not junk vehicles. These challenges raised issues of law because it became necessary to decide the issues as a part of deciding the propriety of issuing a preliminary injunction and, therefore, started the time limit under CR 41. *See Wash. Water Power*, 41 Wn.2d at 489.

After a hearing, the superior court granted the County's motion and issued a preliminary injunction on May 30, 2012. The superior court found that there was a likelihood of an imminent or actual injury based on the ongoing public nuisance condition and that there were at least 69 vehicles on the property, a majority of which met the statutory definitions of junk vehicle. The superior court then issued a preliminary injunction. In doing so, the superior court dissipated the

issues raised by the Youngs' responsive brief and declaration and terminated the time limit under CR 41. *See Wash. Water Power*, 41 Wn.2d at 489-90.

Second, the issues raised by the Youngs' motion for reconsideration were dissipated by the superior court's denial of the motion and issuance of an order clarifying the preliminary injunction. On June 11, 2012, the Youngs filed a motion for reconsideration or clarification of the preliminary injunction order and included a declaration from Colin. This motion raised issues of law and fact and restarted the time limit under CR 41. *See Wash. Water Power*, 41 Wn.2d at 489.

On June 18, 2012, after a hearing, the superior court denied the Youngs' motion for reconsideration, but clarified and amended the preliminary injunction order. By denying reconsideration, the superior court rejected the Youngs' arguments and found an insufficient basis for reconsideration. But the superior court clarified and amended the preliminary injunction. In doing so, the superior court dissipated the issues raised by the Youngs' responsive brief and declaration and terminated the time limit under CR 41. *See Wash. Water Power*, 41 Wn.2d at 489-90.

No issues of law or fact were subsequently joined as neither party took further action in this case until the County moved for summary judgment and the Youngs moved to dismiss. In fact, the Youngs failed to file an answer to the County's complaint until after they moved to dismiss. Because the superior court's preliminary injunction and order denying reconsideration and granting clarification dissipated all issues the Youngs challenged at the time the Youngs brought their motion to dismiss, CR 41(b)(1) did not apply as the time limit had not commenced. *Wash. Water Power*, 41 Wn.2d at 489-90. Therefore, the superior court did not err when it found that CR 41(b)(1) did not apply and denied the Youngs' motion to dismiss.

2.      The Youngs' Arguments

The Youngs argue that (1) their responsive filings raised issues of law and fact that were not dissipated and (2) the superior court improperly relied on pretrial procedure to foreclose operation of CR 41(b)(1).  We disagree.

a.      Undissipated issues

The Youngs argue that their brief opposing the preliminary injunction, motion for reconsideration, and declarations raised issues of law and fact that were not dissipated and triggered the time limit under CR 41.  The Youngs generally note that the issues other than the "junk vehicles" issue were not dissipated; however, the Youngs cite only one example from Colin's declaration challenging the result of a previous abatement action in Mason County Superior Court[4] and prior findings that Colin was operating a wrecking yard at the property.  Appellant's Opening Br. at 12.  In support, the Youngs cite to the following language in *O'Phelan*:

> [A]n issue of law or an issue of fact arises whenever in the progress of a legal action or proceeding it becomes necessary and proper to decide a question of law or a question of fact.
>      . . . .
>       . . . In adopting the rule, this court did not use the phrase "any issue of law or fact" in the narrow and technical sense in which those words had been used in Rem. Rev. Stat. §§ 309, 310, and 311, but in the broader and more accurate sense of having reference to every issue of law or fact, however raised.

6 Wn.2d at 150-52.

---

[4] Insofar as it is necessary to consider the contents of the 2005 Mason County Superior Court order, the Youngs failed to include the order in the appellate record for our review.  It is the appellant's responsibility to perfect the record on appeal.  *Martin v. Wilbert*, 162 Wn. App. 90, 96 n.8, 253 P.3d 108, *review denied*, 173 Wn.2d 1002 (2011).  Therefore, we do not address issues pertaining to the contents of the 2005 order.

Colin's declaration in support of the motion for reconsideration challenged a number of the County's alleged factual assertions besides the storage of junk vehicles, including Mount's assertion on the result of a previous abatement action in Mason County Superior Court, Mount's assertion on the existence of prior findings that Colin was operating a wrecking yard at the property, and the County's assertion on the effect of a 2005 Mason County order. But the County never made these assertions.

Furthermore, "an issue of law or an issue of fact arises whenever in the progress of a legal action or proceeding it becomes necessary and proper to decide a question of law or a question of fact." *O'Phelan*, 6 Wn.2d at 150. Although the Youngs opposed the preliminary injunction on various legal bases and challenged several facts asserted by the County's declarations, the superior court did not need to address every challenge in deciding the County's motion for a preliminary injunction and the Youngs' motion for reconsideration or clarification.

Specifically, the challenges noted by the Youngs regarding the result of a prior abatement action and prior findings about the operation of a wrecking yard were not necessary to deciding the motions relating to the preliminary injunction as the superior court must look to the current conditions of the property, the rights of the County, and the injury to be suffered. To obtain injunctive relief, a plaintiff must establish (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury. *Huff v. Wyman*, 184 Wn.2d 643, 648, 361 P.3d 727 (2015). This inquiry focuses

on the rights of the County and the injury to be suffered.[5] As a result, the Youngs' challenges were not "necessary and proper to decide" in addressing the preliminary injunction motions and thus did not raise or join an issue of law or fact for purposes of CR 41(b)(1).[6] *O'Phelan*, 6 Wn.2d at 150.

The time limit for CR 41(b)(1) terminated after the superior court issued its order clarifying the preliminary injunction and denying reconsideration, and no issues of law or fact were subsequently joined as neither party took any action until the County motioned for summary judgment and the Youngs moved to dismiss. Thus, CR 41(b)(1) did not apply.

b.      Pretrial procedure

The Youngs argue that the superior court erred when it relied on pretrial procedure to foreclose operation of CR 41(b)(1). The Youngs note that the superior court ruled the issue of junk vehicles was dissipated by the preliminary injunction and argue that the preliminary injunction should have no effect on the operation of CR 41(b)(1). In support, the Youngs cite to *Day v. State*, 68 Wn.2d 364, 367, 413 P.2d 1 (1966). In *Day*, our Supreme Court stated, "Pretrial procedures, however, have no effect on this rule of dismissal." 68 Wn.2d at 366.

---

[5] This same analysis applies to the County's other alleged factual assertions that the Youngs challenged, including Mount's assertion on the result of a previous abatement action in Mason County Superior Court, Mount's assertion on the existence of prior findings that Colin was operating a wrecking yard at the property, and the County's assertion on the effect of a 2005 order.

[6] The Youngs fail to provide any legal argument or support to show that an issue is raised or joined for purposes of CR 41(b)(1) whenever any legal argument is made or any fact is challenged, regardless of the necessity to address the challenge.

The *Day* court addressed whether the nonmoving party's settlement offer, which was rejected, tolled the operation of CR 41(b)(1). 68 Wn.2d at 367. In discussing the predecessor of CR 41(b)(1), the court stated that pretrial procedure did not affect the rule. *Day*, 68 Wn.2d at 366. The court then specified that such pretrial procedure was the show cause order in that case. *Day*, 68 Wn.2d at 366-67. The court went on to hold that the nonmoving party's settlement offer and the moving party's rejection waived the time period before the offer and rejection for purposes of the rule. *Day*, 68 Wn.2d at 367.

The Youngs misunderstand the context of the proposition in *Day* and misapply it here. The Youngs use the proposition to make a general assertion that all pretrial procedures have no effect on CR 41(b)(1). But the *Day* court did not make such a sweeping proposition. Although not explicitly stated, the court only specified that the show cause order had no effect on the rule because it did not join any issues. *See Day*, 68 Wn.2d at 366. As a result, this claim fails.[7] Therefore, we hold that the superior court did not err when it found that CR 41(b)(1) did not apply and denied the Youngs' motion to dismiss pursuant to CR 41(b)(1).

---

[7] The Youngs also argue that the superior court's pretrial findings should have been limited to the preliminary injunction and that the superior court erred in its application of the pretrial findings to foreclose the operation of CR 41(b)(1) because they do not represent a final adjudication. The Youngs fail to provide legal argument or support for its argument that the superior court erred in its application of the pretrial findings to foreclose the operation of CR 41(b)(1) because they do not represent a final adjudication, and thus we do not address this claim. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

B.      PRELIMINARY INJUNCTION

The Youngs argue that the superior court abused its discretion when it issued a preliminary injunction against them. We decline to address this issue because it is moot.[8]

We review a superior court's decision on a preliminary injunction for an abuse of discretion. *Huff*, 184 Wn.2d at 648. To obtain injunctive relief, a plaintiff must establish (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury. *Huff*, 184 Wn.2d at 648.

An issue is moot if we cannot provide effective relief. *Herrera v. Villaneda*, 3 Wn. App. 2d 483, 492, 416 P.3d 733 (2018). A final judgment renders the propriety of a temporary order moot. *Ferry County Title & Escrow Co. v. Fogle's Garage, Inc.*, 4 Wn. App. 874, 881, 484 P.2d 458, *review denied*, 79 Wn.2d 1007 (1971); *see also State ex rel. Carroll v. Simmons*, 61 Wn.2d 146, 149, 377 P.2d 421 (1962) ("The temporary injunction was also merged in the final judgment and any question as to the propriety of the entry of such an order is now moot."), *cert. denied*, 374 U.S. 808 (1963).

---

[8] The Youngs also assign error to the superior court's conclusion of law 9 in the preliminary injunction order, which states, "Kitsap County [was] likely to prove the violations of the [KCC chapters 9.56 and 17.530, and] RCW chapter 7.48." CP at 273. However, the Youngs provide argument relating to only their violations of the KCC in the context of their challenge to the summary judgment order, not the preliminary injunction order.

Regardless, the superior court's conclusion of law 9 is supported by its findings of fact, which are supported by substantial evidence. *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). The conclusion is supported by the findings that Lorna was the owner of the property, that the property included a single tax parcel, that the property was zoned rural protected by Kitsap County, that more than 60 vehicles were on the property and constituted junk vehicles, that some of the vehicles were visible from a public street, and that the property never received approval as a vehicle storage lot. These findings are supported by the facts presented in the declarations of Mount, Wachter, and Colin. Thus, the superior court did not err.

16

Here, the issue is moot. The Youngs present a general challenge to only the propriety of the preliminary injunction, claiming the superior court erred in issuing the preliminary injunction and not granting their motion for reconsideration. However, relief from the preliminary injunction became moot when the superior court converted the preliminary injunction into a permanent injunction. In doing so, the superior court ruled that the County had proved the public nuisance conditions violated the County's rights, the County had an actual and substantial injury, and a permanent injunction was necessary to prevent the public nuisance. As a result, we can no longer provide effective relief because there is no preliminary injunction in effect. Thus, this issue is moot.

Also, the factors for considering a moot issue are not met here. We may consider a moot issue if it involves "matters of continuing and substantial public interest." *Thomas v. Lehman*, 138 Wn. App. 618, 622, 158 P.3d 86 (2007). To determine whether a case involves the requisite public interest, we consider "(1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur." *Thomas*, 138 Wn. App. at 622. This exception to the general rule applies "only where the real merits of the controversy are unsettled and a continuing question of great public importance exists." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

The question presented here is of a private nature regarding private property and does not involve issues in need of guidance or likely to recur. The merits of the preliminary injunction have also been settled and there is no continuing question of public importance regarding the injunction.

17

Thus, this issue is not of continuing and substantial public interest warranting review despite its mootness. Therefore, we decline to address this issue.

C.      SUMMARY JUDGMENT

The Youngs argue that the superior court erred when it granted summary judgment in favor of the County.[9] We disagree.

1.      Legal Principles

We review a superior court's summary judgment decision de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). In doing so, we consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. CR 56(c); *Keck*, 184 Wn.2d at 370. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Keck*, 184 Wn.2d at 370. A material fact is one that affects the outcome of the litigation. *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck*, 184 Wn.2d at 370.

---

[9] The Youngs argue that their show cause memorandum and declaration in support are in fact summary judgment responsive pleadings that raise issues of law and fact, but they provide no evidentiary or legal citations in support of this argument. Also, Colin's declaration in support of the memorandum fails to rebut the County's contentions that support summary judgment. We do not consider arguments unsupported by legal citation. *Cowich Canyon Conservancy*, 118 Wn.2d at 809. Allegations in the pleadings or conclusory statements unsupported by evidence do not establish a genuine issue of material fact. *Titan Earthwork, LLC v. City of Federal Way*, 200 Wn. App. 746, 751, 403 P.3d 884 (2017); *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Therefore, this claim fails.

The moving party has the initial burden to show there is no genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). Once the moving party makes such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact. *Zonnebloem*, 200 Wn. App. at 183. The nonmoving party may not rely on speculation or "argumentative assertions that unresolved factual issues remain" to defeat summary judgment. *Titan Earthwork, LLC v. City of Federal Way*, 200 Wn. App. 746, 751, 403 P.3d 884 (2017) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). Mere allegations in the pleadings or conclusory statements unsupported by evidence do not establish a genuine issue of material fact. *Titan Earthwork*, 200 Wn. App. at 751; *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A declaration that contains only conclusory statements without adequate factual support does not create an issue of material fact that defeats a motion for summary judgment." *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 288, 227 P.3d 297 (2010).

2.    Public Nuisance

"A nuisance per se is an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance." *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998). Engaging in any activity in defiance of a law regulating or prohibiting the activity is a nuisance per se. *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 138, 720 P.2d 818 (1986).

The legislature has given counties in Washington State the "power to declare by ordinance what shall be deemed a nuisance within the county." RCW 36.32.120(10). Under the KCC, a

public nuisance includes unapproved "[v]ehicle lots," the storage of a "junk motor vehicle" outside, and violations of KCC Title 17. KCC 9.56.020(10)(b)(iii), (iv); KCC 17.610.030.

a. Unapproved vehicle lot

Under KCC 9.56.020(10)(b)(iv), a public nuisance includes the existence of "[v]ehicle lots without approved land use." A "'[v]ehicle lot'" is "a single tax parcel where more than ten vehicles are regularly stored without approved land use by the [DCD]." KCC 9.56.020(19).

Here, the County met its initial burden to show that the property constituted an unapproved "vehicle lot" and the Youngs failed to sufficiently rebut the contention. The County presented the declaration of Wachter, which included the quitclaim deed for the property as an exhibit. The deed showed that the property was assigned a single tax parcel number in Kitsap County. The County also presented declarations of Mount, which stated that the "[p]roperty continues to be populated with several dozen vehicles" and the Youngs had not obtained any permits for the property. CP at 542. Mount also declared no land use approvals had ever been issued for the property to operate as a vehicle storage lot. And during a flyover of the property, Mount saw 60 or more vehicles stored outside. Mount's declarations also attached pictures that showed at least 10 vehicles on the property had not moved for at least five years, a vehicle had not moved for at least four years, and another vehicle had not moved in at least three years. Thus, the County met its burden to show that there was no genuine issue of material fact that the property was an unapproved "vehicle lot."

The Youngs failed to rebut the County's contention. Although Colin presented his own declaration that asserted Mount's observational claims were not factual, mere allegations or conclusory statements unsupported by evidence do not establish a genuine issue of material fact. *Titan Earthwork*, 200 Wn. App. at 751. The Youngs also failed to challenge, and thus rebut, the

County's contention that the property included a single tax parcel where 10 or more vehicles were regularly stored without the County approving such land use. Thus, the Youngs failed to raise a genuine issue of material fact regarding whether the property was a public nuisance as a vehicle lot without approved land use in violation of KCC 9.56.020(10)(b)(iv).

> b.      Junk motor vehicles

Under KCC 9.56.020(10)(b)(iii), a public nuisance includes the storage of any "junk motor vehicle" outside. A "[j]unk motor vehicle" is defined as a motor vehicle meeting at least three of the following requirements:

> (a)      Is three years old or older;
> (b)      Is extensively damaged, such damage including, but not limited to, any of the following: a buildup of debris that obstructs use, broken window or windshield; missing wheels, tires, tail/headlights, or bumpers; missing or nonfunctional motor or transmission; or body damage;
> (c)      Is apparently inoperable; or
> (d)      Has an approximate fair market value equal only to the approximate value of the scrap in it.

KCC 9.56.020(9).

However, a property may store up to six "junk motor vehicles" outside if the vehicles are completely screened by a fence or natural vegetation or more than 250 feet away from all property lines. KCC 9.56.020(10)(b)(iii)(A). "'Screened' means not visible from any portion or elevation of any neighboring or adjacent public or private property, easement, or right-of-way." KCC 9.56.020(17). "Any junk motor vehicle that is stored outside on private property without an approved environmental mitigation agreement with the [DCD] shall be considered a nuisance." KCC 9.56.020(10)(b)(iii)(A).

Here, the County met its initial burden to show that the property stored "junk motor vehicles" outside and that the exceptions did not apply. Mount's declaration and attached exhibits showed that "junk motor vehicles" were stored on the property. Mount's declaration stated that he visited a neighboring property on multiple occasions that allowed him to view all the open fields of the property. Comparing the photographs of the property, Mount could see that many of the vehicles had not been moved for over four years. Mount's declaration also attached photographic exhibits depicting at least 10 vehicles on the property that had not moved for at least five years, a vehicle that had not moved for at least four years, and another vehicle that had not moved in at least three years. The photographs showed that 12 vehicles on the property were at least three years old. The photographs also showed that these 12 vehicles included a car with a broken side mirror, a car with a damaged front bumper, and a van with a missing hood. Thus, at least three of the 12 vehicles on the property were damaged. The photographs further showed that the car with a damaged front bumper was raised and the van with a missing hood had severe front end damage. Thus, at least two vehicles on the property were apparently inoperable. Taken altogether, the County met its burden to show that there was no genuine issue of material fact that the property stored "junk motor vehicles" outside.

The County also met its initial burden to show that the exception to the storage of "junk motor vehicles" outside did not apply. In his declaration, Mount stated that the "vehicles on the [p]roperty are easily visible from both the neighboring properties and from NE Big Valley Road" and that the vehicles "are not behind any sort of screening or fencing." CP at 544. Mount also stated that "many of the vehicles are located within 250 feet of the property line." CP at 544. Finally, "neither Ms. Lorna Young nor [Colin] have . . . attempted to enter into an environmental

22

mitigation agreement as required." CP at 544. The photographs attached to Mount's declaration showed that the "junk motor vehicles" on the property were not completely screened by a fence or natural vegetation as they were visible from the neighboring properties.

The Youngs failed to rebut the County's contentions. The Youngs presented arguments in their responsive filings, but allegations in the pleadings are insufficient to defeat summary judgment. *Titan Earthwork*, 200 Wn. App. at 751; *Young*, 112 Wn.2d at 225. The Youngs only presented a declaration from Colin, which failed to rebut the County's contentions. Although Colin stated that Mount did not present any facts on the operability of the vehicles that could be confirmed, the definition of "junk motor vehicle" requires only apparent inoperability. KCC 9.56.020(9). Furthermore, although Colin stated that the property was screened and the trees on the property screened the vehicles, the requirement under the junk vehicle exception requires the junk vehicles to be completely screened and not visible from any portion or elevation of any neighboring or adjacent properties. KCC 9.56.020(10)(b)(iii)(A), .020(17). Thus, the Youngs failed to rebut the County's showing that there was no genuine issue of material fact that there were "junk vehicles" on the property and that the exception did not apply. Thus, summary judgment was proper on the issue of the property having "junk vehicles" outside and constituting a public nuisance.[10]

---

[10] The Youngs also argue for the first time in their reply brief that insufficient evidence was presented to find that the property stored "junk vehicles" and constituted a "vehicle lot." However, "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. Therefore, we decline to address these claims.

c.       Violation of KCC Title 17

"Any use, building or structure in violation of [Title 17 of the KCC] is unlawful, and a public nuisance." KCC 17.610.030. KCC 17.410.042 prohibits vehicle storage in a rural protected zone. And the storage of "junk motor vehicles" must comply with substantially similar requirements as KCC 9.56.020(10)(b)(iii)(A). KCC 17.410.060(B)(6).

Under KCC 17.410.060(B)(6)(a), the storage of "junk motor vehicles" outside is prohibited, unless there are six or fewer "junk motor vehicles" and the vehicles are (1) completely screened to the satisfaction of the director or (2) stored more than 250 feet away from all property lines. "The owner of any such junk motor vehicle(s) must successfully enter into an environmental mitigation agreement with the [DCD]." KCC 17.410.060(B)(6)(b).

As discussed above, the County established that there was no genuine issue of material fact that at least two "junk motor vehicles" were stored outside on the property, not screened, and without an environmental mitigation agreement. Thus, the County also established that there was no genuine issue of material fact that the property violated KCC 17.410.060(B)(6). Therefore, the superior court did not err when it found that the property constituted a public nuisance and granted summary judgment in favor of the County.[11]

---

[11] The Youngs argue that the superior court erred when it applied collateral estoppel to the hearing examiner's finding of "junk vehicles" and vehicle storage lot. However, application of collateral estoppel does not affect the outcome of this case. In addition to the 2011 hearing examiner's decision, the County submitted additional evidence to show that no genuine issue of material fact existed regarding the property constituting a public nuisance (1) as an unapproved "vehicle lot" and (2) due to the presence of "junk motor vehicles" on the property without an applicable exception. This provided the superior court with an independent basis for its decision, which the superior court utilized to alternatively find that the property constituted a public nuisance.

The Youngs also appear to argue that a genuine issue of material fact existed regarding Mount and other administrative officials conducting a search without obtaining a proper warrant.

No. 50361-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.

---

However, the evidence presented and relied on by the superior court, namely the photographic exhibits by Mount, were obtained from a neighboring property and not from the property itself. Therefore, this claim fails.